Filed 6/25/14; pub. & mod. order 7/22/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TIMOTHY SANDQUIST, | B244412 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC476523) |
| v. | |
| LEBO AUTOMOTIVE, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge. Reversed with directions.

Sanford Heisler, Janette Wipper and Felicia Medina for Plaintiff and Appellant.

Fisher & Phillips, James J. McDonald, Jr., and Grace Y. Horoupian for Defendants and Respondents.

_____

## INTRODUCTION

In this class action, plaintiff Timothy Sandquist purports to appeal from the trial court's August 14, 2012 order granting defendants' motion to compel him to arbitrate his individual claims, as well as defendants' motion to dismiss all class claims without prejudice. Although this order is not appealable, we liberally construe Sandquist's notice of appeal to include the trial court's October 5, 2012 order dismissing his class claims with prejudice, which is appealable under the death knell doctrine. Limiting our review to Sandquist's challenges to the order dismissing the class claims, we agree with Sandquist that the trial court erred by deciding the issue whether the parties agreed to class arbitration, and that the court should have submitted the issue to the arbitrator. Therefore, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Sandquist began working in sales at Manhattan Beach Toyota in September 2000. Joel Rabe, Sandquist's sales floor manager, provided Sandquist with a large amount of paperwork to fill out but did not discuss any of the documents with him. Rabe simply told Sandquist to complete the paperwork quickly so he could get out onto the sales floor. The paperwork consisted of about 100 pages, including an employee handbook. Sandquist filled out the paperwork as best and as quickly as he could. Due to time constraints Sandquist did not review the documents and did not know he was signing multiple arbitration agreements. He signed the documents because he needed the job.

Among the documents Sandquist signed was a document entitled "APPLICANT'S STATEMENT & AGREEMENT." It provided in pertinent part: "I and the Company both agree that any claim dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, as well as all other applicable state or federal laws or regulations) which would otherwise require or allow resort to any court or other

2

governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, and Employment Development Department claims) shall be submitted to and determined exclusively by binding arbitration. . . ."

Sandquist also signed a separate document acknowledging that he was an "at will" employee and agreeing "that any claim, dispute, and/or controversy (including, but not limited to any claims of discrimination and harassment) which would otherwise require or allow resort to any court or other governmental dispute resolution forum, between me and the Company (or its owners, directors, officers, managers, employees agents, and parties affiliated with its employee benefits and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, shall be submitted to and determined exclusively by binding arbitration . . . ."

Finally, Sandquist signed a document entitled "EMPLOYEE ACKNOWLEDGMENT AND AGREEMENT." In addition to an acknowledgment of receipt of the dealership's employee handbook, the document contained the following arbitration provision: "I agree that any claim, or dispute, or controversy (including, but not limited to, any and all claims of discrimination and harassment) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my

3

seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers Compensation Act, and Employment Development Department claims), shall be submitted to and determine[d] exclusively by binding arbitration . . . ."

All three arbitration provisions further specified that arbitration would be governed by the Federal Arbitration Act (FAA) in conformity with the procedures of the California Arbitration Act (Code Civ. Proc., § 1280 et seq.).

Sandquist, who is African-American, filed this class action on January 9, 2012 against defendants Lebo Automotive, doing business as John Elway's Manhattan Beach Toyota, John Elway, Mitchell D. Pierce, Jerry L. Williams, and Darrell Sperber, who had purchased the dealership in 2007. On February 1, 2012 Sandquist filed his operative first amended class action complaint alleging violations of California's Fair Employment and Housing Act (FEHA; Gov. Code, § 12940 et seq.) and Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), and seeking injunctive and declaratory relief and damages.

Sandquist asserted individual and class claims against the dealership for race, color, national origin, and ancestry discrimination and against all the defendants for hostile work environment. Sandquist also alleged an individual claim against the dealership for constructive discharge. He alleged that despite his "enormous success at and loyalty to the dealership, [he] was passed over for promotions, denied salary increases, and harassed on the basis of his race. [He] not only experienced discrimination on a routine basis, but he also witnessed" Elway, Pierce, and Williams "participate in, aid, abet, substantially assist, condone, or ratify discrimination and harassment in the face of widespread complaints that GM Sperber was a 'repeat harasser' who freely and openly harassed employees of color. After persevering for four years against the ongoing discrimination and hostile work environment that permeated" the dealership, Sandquist "was forced to resign in 2011."

4

On March 20, 2012 defendants filed a motion to compel individual arbitration pursuant to Code of Civil Procedure section 1281.2 and to stay or dismiss the proceedings with the trial court retaining jurisdiction to enforce any arbitration award. In support of their motion defendants relied on the three arbitration agreements signed by Sandquist on his first day of work.

On August 14, 2012 the trial court granted the motion. The trial court concluded that the FAA applied and that the agreement was not unconscionable, finding no substantive unconscionability and a "low" level of procedural unconscionability.[1] With regard to the class claims the trial court ruled: "And to clean up any procedural details with regard to . . . class allegations, the Court is going to dismiss or strike the class allegations as being irrelevant, false or an improper matter in the complaint under Code of Civil Procedure section 436[2] because there's no basis, contractual basis, to compel [class] arbitration. [¶] Since the plaintiff himself is now going to be subject to individual arbitration, there would no longer be any representative in the lawsuit that would be able to adequately represent a class action to pursue the claims that are asserted by plaintiff." The trial court further stated that it would "dismiss the class allegations without prejudice and set a time limit of 60 days for plaintiff to amend. And if plaintiff does not amend to bring forth a class representative that could support this class action to reinstitute the class allegations, then the defendant may request the dismissal of the case with prejudice."

---

[1]     The parties do not dispute the trial court's determination that the FAA, which applies in cases involving interstate commerce, governs this case. In fact, all three arbitration provisions specify that the arbitration is governed by the FAA.

[2]     Code of Civil Procedure section 436 provides: "The court may, upon a motion made pursuant to Section 435, or at any time in its discretion, and upon terms it deems proper: [¶] (a) Strike out any irrelevant, false, or improper matter inserted in any pleading. [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."

On September 28, 2012 counsel for Sandquist advised the trial court that they had been unable to locate an employee of the dealership who had not signed the arbitration agreements. In the absence of a substitute class representative the trial court stated it would dismiss the class claims with prejudice.

On October 5, 2012 the trial court signed an order dismissing the class claims with prejudice. The court's order noted that Sandquist "was provided up to and including September 18, 2012 to amend his Complaint in order to bring forth a class representative that could support Plaintiff's class action to reinstate the class allegations. Plaintiff having failed to amend his complaint by September 18, 2012, IT IS HEREBY ORDERED that Plaintiff's class claims are dismissed with prejudice." That same day, October 5, 2012, Sandquist filed a notice of appeal from the August 14, 2012 order granting defendants' motion to compel arbitration and dismissing class claims without prejudice, and attached a copy of the August 14 order to his notice of appeal. Sandquist did not include in the notice of appeal the October 5, 2012 order entered that same day.

## DISCUSSION

A. *Appealability*

Because "'the question of appealability goes to our jurisdiction, we are dutybound to consider it on our own motion.'" (*deSaulles v. Community Hospital of the Monterey Peninsula* (2014) 225 Cal.App.4th 1427, 1435, *quoting Olson v. Cory* (1983) 35 Cal.3d 390, 398; see *Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1544 ["because [appealability] implicates our jurisdiction, we review the issue on our own motion"].)

In his opening brief Sandquist states that "[t]his appeal arises from the August 14, 2012 and October 5, 2012 orders of the Los Angeles Superior Court." In his notice of appeal, however, Sandquist only listed the August 14, 2012 order. Therefore, as a preliminary matter, we must decide whether the trial court's August 14, 2012 order is appealable and, if not, whether Sandquist's failure to include the court's October 5, 2012 order in his notice of appeal requires dismissal of his appeal.

6

An order granting a motion to compel arbitration is not appealable. (Code Civ. Proc., § 1294, subd. (a); *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1164, fn. 2; *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1121 (*Nelsen*).) Rather, it is reviewable on appeal from the final judgment entered after confirmation of the arbitration award. (*Nelsen*, *supra*, at pp. 1121-1122; *Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506, 513.) In his opening brief Sandquist acknowledges that "orders granting motions to compel arbitration are not ordinarily appealable" but asserts that "the instant appeal is authorized under the 'death knell' doctrine," which "allows appeal from any order that is 'tantamount to a dismissal of the action as to all members of the class other than the plaintiff.'"

"The death knell doctrine is applied to orders in class actions that effectively terminate class claims, such as orders denying class certification or decertifying a class, while allowing individual claims to persist. [Citations.] The doctrine is animated by the concern 'that an individual plaintiff may lack incentive to pursue his individual claims to judgment, thereby foreclosing any possible appellate review of class issues.' [Citation.] To preserve appellate review of class issues, the death knell doctrine permits appeal from 'an order that . . . amounts to a de facto final judgment for absent plaintiffs, under circumstances where . . . the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered.' [Citation.] Under this doctrine, an order compelling a plaintiff to pursue his or her claim in arbitration and dismissing the action as to all other members of the class has been held to be immediately appealable. [Citation.]" (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 766; see *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 758 ["only an order that entirely terminates class claims is appealable"]; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [order that "is tantamount to a dismissal of the action as to all members of the class other than plaintiff" is appealable]; *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 19 [termination of class claims is "a prerequisite for the death knell doctrine"].)

7

Although the August 14, 2012 order compelled Sandquist to arbitrate his individual claims against the defendants, the trial court's order did not finally terminate the class claims. By dismissing the class claims *without prejudice* the trial court left open the possibility that the class claims would continue with the substitution of a new class representative. Such an order was not final and appealable. (See *Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 586 [an order denying class certification without prejudice is not appealable as "[t]he death knell has not yet sounded"].) Because the "death knell doctrine" applies only to "those orders that effectively terminate class claims but permit individual claims to continue" (*In re Baycol Cases I & II*, *supra*, 51 Cal.4th at p. 754), this doctrine does not make the August 14 order appealable. Although Sandquist could have sought immediate review of the August 14 order by filing a petition for writ of mandate, he did not do so. (See *Phillips v. Sprint PCS*, *supra*, 209 Cal.App.4th at p. 767 ["'immediate review of an order granting a motion to compel arbitration may be obtained by a petition for writ of mandate'"]; *Kinecta Alternative Financial Solutions, Inc. v. Superior Court*, *supra*, 205 Cal.App.4th at p. 513 [same].)

While we may treat a nonappealable order granting a motion to compel arbitration as a writ, we decline to do so here. "'[W]rit review of orders compelling arbitration is proper . . . (1) if the matters ordered arbitrated fall clearly outside the scope of the arbitration agreement or (2) if the arbitration would appear to be unduly time consuming or expensive.' [Citation.]" (*Kinecta Alternative Financial Solutions, Inc. v. Superior Court*, *supra*, 205 Cal.App.4th at p. 513, quoting *Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 160; accord, *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1566.) Sandquist's individual claims do not "fall clearly outside the scope" of the arbitration agreements, and nothing in the record indicates that arbitration of Sandquist's individual claims would be unduly time consuming or expensive. Therefore, we do not at this time review the propriety of the trial court's August 14, 2012 order, including the trial court's determination that the arbitration provisions were not unconscionable.

The question remaining is whether we may and should liberally construe Sandquist's notice of appeal to include an appeal from the October 5, 2012 order

dismissing the class claims with prejudice.  In *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, after the trial court had entered a judgment in favor of the defendant, the plaintiff unsuccessfully moved for a new trial.  The plaintiff appealed from the nonappealable order denying his motion for a new trial but did not appeal from the existing judgment.  The *Walker* court contrasted cases like *Rodriquez v. Barnett* (1959) 52 Cal.2d 154, where the appellant appeals from both an appealable judgment and a nonappealable order with cases where the appellant appeals only from a nonappealable order.  (*Walker*, *supra*, 35 Cal.4th at pp. 19-20.)  The *Walker* court noted that, in the latter category of cases, dismissal of the appeal from the nonappealable order would have the effect of completely denying appellate review.  The Supreme Court held that "[b]ecause '[t]he law aspires to respect substance over formalism and nomenclature' [citation], a reviewing court should construe a notice of appeal from an order denying a new trial to be an appeal from the underlying judgment when it is reasonably clear the appellant intended to appeal from the judgment and the respondent would not be misled or prejudiced."  (*Id*. at p. 22, fn. omitted.)

Here, Sandquist filed his notice of appeal the same day that the trial court entered its order dismissing the class claims with prejudice.  Because this order effectively terminated the class claims, it was appealable under the death knell doctrine.  (See *In re Baycol Cases I & II*, *supra*, 51 Cal.4th at p. 754.)  We therefore liberally construe Sandquist's notice of appeal to encompass the trial court's October 5, 2012 order.

> B.      *The Determination of Whether an Arbitration Agreement Provides*
> *for Class Arbitration:  Trial Court or Arbitrator*

Sandquist contends that the trial court "wrongly conducted a clause construction analysis of the Acknowledgements and held that they contain an *implied* class action waiver."  Sandquist, citing *Green Tree Fin. Corp. v. Bazzle* (2003) 539 U.S. 444 [123 S.Ct. 2402, 156 L.Ed.2d 414] (*Bazzle*) and *Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297 (*Garcia*), argues that the arbitrator, not the court, determines whether the arbitration agreement provides for class arbitration.  Defendants argue that the trial

9

court correctly relied on *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662 [130 S.Ct. 1758, 176 L.Ed.2d 605] (*Stolt-Nielsen*) in ruling that the court decides this issue. It turns out that this issue is not entirely settled.

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' [Citations.]" (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 [123 S.Ct. 588, 154 L.Ed.2d 491] (*Howsam*); see *Am. Express v. Italian Colors Rest.* (2013) 570 U.S. ___ [133 S.Ct. 2304, 2306, 186 L.Ed.2d 417] [it is an "overarching principle that arbitration is a matter of contract"]; *Oxford Health Plans LLC v. Sutter* (2013) 569 U.S. ___ [133 S.Ct. 2064, 2066, 186 L.Ed.2d 113] ["[c]lass arbitration is a matter of consent: [a]n arbitrator may employ class procedures only if the parties have authorized them"].)

In *Howsam*, *supra*, 537 U.S. 79, the United States Supreme Court explained that, although the Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements,' [citation], it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' [Citations.]" (*Id*. at p. 83.)

The Supreme Court noted that "[l]inguistically speaking, one might call any potentially dispositive gateway question a 'question of arbitrability,' for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that . . . the phrase 'question of arbitrability' has a far more limited scope. [Citation.] The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

10

"Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide. [Citations.] Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. [Citations.]

"At the same time the Court has found the phrase 'question of arbitrability' *not* applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter. Thus '"procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide. [Citation.] So, too, the presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability.' [Citation.]" (*Howsam*, *supra*, 537 U.S. at pp. 83-84.)

A majority of the United States Supreme Court has yet to decide whether the determination of whether the parties agreed to class arbitration is a gateway question for the court or a question for the arbitrator where, as here, the arbitration agreement is silent on the issue of class arbitration. (See *Oxford Health Plans LLC v. Sutter*, *supra*, 569 U.S. at p. ___ [133 S.Ct. at p. 2068, fn. 2] ["this Court has not yet decided whether the availability of class arbitration is a question of arbitrability" and "this case gives us no opportunity to do so"].) In *Bazzle*, *supra*, 539 U.S. 444 a plurality of four justices of the United States Supreme Court concluded that, where the parties to an arbitration agreement agree to submit to the arbitrator "'*all* disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract,'" the arbitrator decides whether the arbitration agreement allows or precludes class arbitration. (*Id.* at pp. 451-452.) Following *Bazzle*, the Court of Appeal in *Garcia* stated that "[t]he Supreme Court has spoken, and the foundational issue—whether a particular arbitration agreement prohibits class arbitrations—must (in FAA cases) henceforth be decided by the arbitrators, not the courts." (*Garcia*, *supra*, 115 Cal.App.4th at p. 298.)

The Supreme Court in *Bazzle*, however, did not speak on this issue with five votes. In *Stolt-Nielsen*, *supra*, 559 U.S. 662, the United States Supreme Court noted that *Bazzle* "did not yield a majority decision" on the question whether the court or the arbitrator

11

should decide if the arbitration agreement contemplates class arbitration. (*Id.* at p. 679.) The *Stotl-Nielsen* court further observed: "Unfortunately, the opinions in *Bazzle* appear to have baffled the parties in this case at the time of the arbitration proceeding. For one thing, the parties appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration. . . . In fact, however, only the plurality decided that question. But we need not revisit that question here because the parties' supplemental agreement expressly assigned this issue to the arbitration panel, and no party argues that this assignment was impermissible." (*Id*. at p. 680; see *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 515, fn. 4 ["as *Stolt-Nielsen* noted, *Bazzle* was a plurality decision on this point and is not binding authority"]; *Nelsen*, *supra*, 207 Cal.App.4th at p. 1129, fn. 6 [same].)

As the court in *Nelsen* noted, "some federal courts have decided issues of class arbitration are generally for the arbitrator to decide, at least when the arbitration agreement does not provide otherwise. (See, e.g., *Guida v. Home Savings of America, Inc.* (E.D.N.Y. 2011) 793 F.Supp.2d 611, 617-618, and cases collected therein.)" (*Nelsen*, *supra*, 207 Cal.App.4th pp. 1128-1129, fn. omitted.) Because the parties in *Nelsen* asked the appellate court to decide the arbitrability issue, the *Nelsen* court did not have to resolve the issue of whether the court or the arbitrator should decide it.[3]

Courts that have decided the issue have reached conflicting conclusions. Most courts have concluded that the question of class arbitrability is for the arbitrator. (See,

---

**3**     The court in *Nelsen* observed that "neither party has proposed we leave the question of class arbitration for the arbitrator. Both parties invite *this court* to decide the issue. [The defendant] asks that we find the arbitration agreement does not reflect its consent to class arbitration, while [the plaintiff] requests we either find the arbitration agreement unenforceable or interpret it to allow class arbitration. In any event, for the reasons we will discuss, we believe it is clear the agreement precludes class arbitration and do not think any reasonable arbitrator applying California law could find otherwise." (*Nelsen*, *supra*, 207 Cal.App.4th at p. 1129.) The adoption of this "reasonable arbitrator" test allowed the *Nelsen* court to avoid the issue. Neither side in this appeal advocates for a "reasonable arbitrator" test.

12

e.g., *Quilloin v. Tenet HealthSystem Philadelphia, Inc.* (3d Cir. 2012) 673 F.3d 221, 232; *In re A2P SMS Antitrust Litigation* (S.D.N.Y., May 29, 2014, No. 12 CV 2656) ___ F.Supp.2d ___ [2014 WL 2445756, p. 10]; *Lee v. JPMorgan Chase & Co.* (C.D. Cal., Nov. 14, 2013, SACV 13-511) ___ F.Supp.2d ___ [2013 WL 6068601, pp. 2-4]; *Guida v. Home Savings of America, Inc.*, *supra*, 793 F.Supp.2d at p. 615.)  Some courts have concluded that class arbitrability is a question for the court.  (See, e.g., *Reed Elsevier, Inc. v. Crockett* (6th Cir. 2013) 734 F.3d 594, 598-599 (*Reed Elsevier*); *Chassen v. Fidelity Nat. Financial, Inc.* (D.N.J., Jan. 17, 2014, No. 09-291) 2014 WL 202763, p. 6.)

Although the plurality opinion in *Bazzle* is not binding, it is persuasive.  (See *Thalheimer v. City of San Diego* (9th Cir. 2011) 645 F.3d 1109, 1127, fn. 5 ["we follow the [Supreme Court] plurality opinion as persuasive authority, though 'not a binding precedent'"], quoting *Texas v. Brown* (1983) 460 U.S. 730, 737 [103 S.Ct. 1535, 75 L.Ed.2d 502].)  We agree with the majority of cases that follow the plurality opinion in *Bazzle* that the question whether the parties agreed to class arbitration in cases where the arbitration agreement is silent is determined by the arbitrator.  (See, e.g., *Lee v. JPMorgan Chase & Co.*, *supra*, ___ F.Supp.2d at p. ___ [2013 WL 6068601, p. 4, fn. 4 [although *Bazzle* is a plurality opinion and thus is not binding it nevertheless is instructive].)  Such a rule is particularly appropriate in light of the fact that a class action is a procedural device.  (See *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 331 [class action is a "procedural device"]; *Duran v. U.S. Bank Nat. Assn.* (May 29, 2014, S200923) ___ Cal.4th ___ [2014 WL 2219042, p. 17]; *Sky Sports, Inc. Superior Court* (2011) 201 Cal.App.4th 1363, 1369 ["[a] class action is a procedural device"].)  As noted, a majority of the United States Supreme Court has stated that "'"procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide."  (*Howsam*, *supra*, 537 U.S. at p. 84.)

Those courts that have reached a contrary result have emphasized the Supreme Court's statements about the "'fundamental'" differences between bilateral and classwide arbitration.  (See, e.g., *Reed Elsevier*, *supra*, 734 F.3d at p. 598, citing *AT&T Mobility*

13

*LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740, 1750, 179 L.Ed.2d 742] (*Concepcion*).)[4] As those courts that have concluded the arbitrator decides whether the parties agreed to class arbitration have explained, however, these concerns are more relevant to the issue of whether the parties agreed to class arbitration rather than to the issue of whether the court or the arbitrator decides if an agreement contemplates class arbitration. (See *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, *supra*, 673 F.3d at p. 232 ["the actual determination as to whether class action is prohibited is a question of interpretation and procedure for the arbitrator"]; *In re A2P SMS Antitrust Litigation*, *supra*, ___ F.Supp.2d at p. ___ [2014 WL 2445756, p. 11] ["under *Stolt-Nielsen* [the] differences [between bilateral and class arbitration] are primarily relevant to deciding the availability of such class arbitration, not the antecedent question of whether that decision is assigned to the Court or the arbitrator"]; *Lee v. JPMorgan Chase & Co.*, *supra*, ___ F.Supp.2d at p. ___ [2013 WL 6068601, p. 4] ["[t]he only question, as in *Bazzle*, is the interpretive one of whether or not the agreements authorize Plaintiffs to pursue their claims on a class, collective, or representative basis," and "[t]hat question concerns the

---

**4** The *Reed Elsevier* court listed several differences between bilateral and classwide arbitration: "First, arbitration's putative benefits—'lower costs, greater efficiency and speed,' et cetera—'are much less assured' with respect to classwide arbitration, 'giving reason to doubt the parties' mutual consent' to that procedure. *Stolt-Nielsen*[, *supra*, 559 U.S.] at [p.] 685; see also *Concepcion*, [*supra*, 563 U.S. at p. ___] 131 S.Ct. at [p.] 1751 . . . . Second, '[c]onfidentiality becomes more difficult' in classwide arbitrations, [*Concepcion*, *supra*,] at [p.] 1750—thus 'potentially frustrating the parties' assumptions when they agreed to arbitrate.' *Stolt-Nielsen*, [*supra*,] at [p.] 686. Third, 'the commercial stakes of class-action arbitration are comparable to those of class-action litigation' . . . 'even though the scope of judicial review is much more limited[.]' *Id.* at [pp.] 686-[6]87." (*Reed Elsevier*, *supra*, 734 F.3d at p. 598.) The *Reed Elsevier* court also noted that "'where absent class members have not been required to opt *in*, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used.' *Oxford Health* [*Plans LLC v. Sutter*], [*supra*, 569 U.S. at p. ___] 133 S.Ct. at [pp.] 2071-[20]72 . . . . Thus, in sum, '[a]rbitration is poorly suited to the higher stakes of class litigation.' *Concepcion*, [*supra*, 563 U.S. at p. ___] 131 S.Ct. at [p.] 1752." (*Reed Elsevier*, *supra*, at p. 598.)

14

procedural arbitration mechanisms available to Plaintiffs, and does not fall into the limited scope of this Court's responsibilities in deciding a motion to compel arbitration"]; *Guida v. Home Savings of America, Inc.*, *supra*, 793 F.Supp.2d at p. 616, fn. omitted [in light of *Stolt-Nielsen* and *Bazzle* "the ability of a class to arbitrate a dispute where the parties contest whether the agreement to arbitrate is silent or ambiguous on the issue is a procedural question that is for the arbitrator to decide"].)

We therefore hold that the question whether the parties agreed to class arbitration was for the arbitrator rather than the court to decide, and that the trial court erred by deciding that issue in this case. We do not reach, and leave for the arbitrator, the merits of whether the arbitration provisions Sandquist signed permit class arbitration. We also do not address, and leave for the arbitrator to consider, Sandquist's argument that the trial court failed to consider extrinsic evidence demonstrating that the parties impliedly agreed to arbitrate on a class-wide basis.[5]

---

[5]  In correspondence dated April 22, 2014, counsel for Sandquist notified this court that "Sandquist is rescinding the arguments outlined in Appellant's Opening Brief and Reply brief concerning the viability of *Gentry v. Superior Court* [(2007)] 42 Cal.4th 443." In *Gentry* the California Supreme Court held that class arbitration waivers in employment arbitration agreements should not be enforced if the trial court, after considering specific factors, determines "that class arbitration would be a significantly more effective way of vindicating the rights of affected employees than individual arbitration." (*Id.* at pp. 450, 463.) At the time we received counsel for Sandquist's correspondence, the question whether the United States Supreme Court's decision in *Concepcion*, *supra*, 563 U.S. ___ [131 S.Ct. 1740], impliedly overruled *Gentry* was pending before the California Supreme Court in *Iskanian v. CLS Transportation of Los Angeles, LLC*, S204032. On June 23, 2014 the Supreme Court issued its decision in *Iskanian* and concluded "in light of *Concepcion* that the FAA preempts the *Gentry* rule." (*Iskanian v. CLS Transp. Los Angeles, LLC* (June 23, 2014, S204032) ___ Cal.4th ___ [2014 WL 2808963, p. 6].)

## DISPOSITION

The order dismissing the class claims is reversed and the matter is remanded to the trial court with directions to vacate its order dismissing class claims and to enter a new order submitting the issue of whether the parties agreed to arbitrate class claims to the arbitrator. Sandquist is to recover his costs on appeal.

SEGAL, J.*

We concur:

PERLUSS, P. J.

WOODS, J.

---

\* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 7/22/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TIMOTHY SANDQUIST, | B244412 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC476523) |
| v. | |
| LEBO AUTOMOTIVE, INC. et al., | ORDER MODIFYING OPINION AND CERTIFYING FOR PUBLICATION, |
| Defendants and Respondents. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on June 25, 2014, be modified as follows:

On page 8, the second full paragraph, the first sentence beginning "While we may treat" is revised so the sentence now reads as follows:

> While we may treat an appeal from a nonappealable order granting a motion to compel arbitration as a petition for a writ, we decline to do so here.

There is no change in the judgment.

The opinion in the above-entitled matter filed on June 25, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____        _____        _____
PERLUSS, P. J.                WOODS, J.                            SEGAL, J.*

_____

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.