Filed 1/13/15  Rivers v. Cedars-Sinai CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NAKIA RIVERS, | B249979 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC492676) |
| v. | |
| CEDARS-SINAI MEDICAL CARE FOUNDATION, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court for Los Angeles County, Kenneth R. Freeman, Judge.  Reversed and remanded with directions.

Capstone Law, Matthew T. Theriault, Glenn A. Danas and Liana Carter for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Daniel J. McQueen and Marlene M. Nicolas, for Defendant and Respondent.

_____

Nakia Rivers appeals from an order compelling her to arbitrate her individual wage and hour claims and dismissing her class action claims alleging the same violations.[1]  Rivers contends the trial court erred in dismissing her class claims because the determination whether the parties to an arbitration agreement agreed to arbitrate class claims is a procedural question for the arbitrator, not the court.  We agree and reverse.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Rivers's Employment and Agreement To Arbitrate*

Rivers was employed by Cedars-Sinai Medical Care Foundation (Cedars) in Los Angeles from July 25, 2005 through October 4, 2011 as a patient services representative, a position classified as a nonexempt hourly employee.  As a condition of her employment, Rivers signed a two-page document entitled "Mutual Agreement to Arbitrate Claims."  It provided that both Cedars and Rivers agree "to submit all claims or controversies in any way relating to or associated with [Rivers's] employment or the termination of employment ('Claims') to the Chief Executive Officer of [Cedars.]  If a claim is not resolved by the Chief Executive Officer of [Cedars], and if the Claim demands $25,000.00 or more, you and [Cedars] agree that the Claim will be resolved exclusively by binding arbitration."  The agreement made no mention of class action claims.

---

[1]     Although orders compelling arbitration are generally not appealable (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648), an order dismissing class claims while allowing individual claims to survive is treated as an appealable order under the "death knell doctrine."  (See *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757 [under the "death knell doctrine," when an "order effectively [rings] the death knell for the class claims, [the court] treats it as in essence a final judgment on those claims, which [is] appealable immediately"]; *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 766 [recognizing death knell doctrine is applicable to orders compelling a plaintiff to pursue individual claims in arbitration and dismissing action as to all other members of the class].)

[2]     This issue, which we decided in favor of the arbitrator resolving the question in *Sandquist v. Lebo Automotive, Inc.* (2014) 228 Cal.App.4th 65, review granted, Nov. 12, 2014, S220812), is currently pending before the California Supreme Court.

## 2. *Rivers's Putative Class Action*

On October 18, 2012 Rivers filed a first amended complaint on behalf of herself and all "other members of the general public similarly situated," alleging several wage and hour violations as well as violations of the Labor Code and Business and Professions Code section 17200 (unfair and unlawful business practices). The complaint identified the proposed class as "[a]ll Patient Service Representatives, Medical Assistants, and other non-exempt or hourly paid patient care employees who worked for [Cedars] in California within four years prior to the filing of this complaint until the date of certification [of the class]." On behalf of herself and others similarly situated, Rivers sought restitution, damages and attorney fees in excess of $25,000.

## 3. *Cedars's Petition To Compel Arbitration and Dismiss the Class Claims*

On January 11, 2013 Cedars filed a petition to compel arbitration of Rivers's individual claims and to dismiss the class claims, which it asserted fell outside the scope of the arbitration agreement. Rivers opposed the petition, contending that when, as here, an agreement to arbitrate contains no express provision either permitting or restricting arbitration of representative claims, the determination whether the agreement encompasses class claims is a question properly reserved for the arbitrator, not the court. Rivers also challenged the petition to compel arbitration of her individual claims on several grounds, including that the arbitration agreement was unconscionable.

## 4. *The Trial Court's Ruling*

Following a hearing the trial court granted Cedars' petition in its entirety. Citing multiple appellate decisions that had reached conflicting determinations and characterizing the issue whether the court or arbitrator decides the availability of class arbitration under the Federal Arbitration Act (FAA)[3] as "a very close call," the trial court ruled the question is for the trial court absent a clear expression of contrary intent in the agreement. The court then interpreted the agreement, determined the parties did not intend to arbitrate a dispute on a classwide basis and dismissed the class claims with

---

[3] The parties do not dispute the FAA governs their arbitration agreement.

3

prejudice. It also rejected Rivers's assertion the arbitration agreement was unconscionable, found her individual claims were encompassed by the arbitration agreement and ordered her to submit those claims to binding arbitration.

## DISCUSSION

1. *Overview of Governing Law on Arbitration*

a. *Arbitration generally*

Arbitration is a matter of contract. (*American Express Co. v. Italian Colors Restaurant* (2013) __ U.S. __ [133 S.Ct. 2304, 2306, 186 L.Ed.2d 417 [it is an "overarching principle that arbitration is a matter of contract"]; accord, *Oxford Health Plans LLC v. Sutter* (2013) __ U.S. __ [133 S.Ct. 2064, 2066, 186 L.Ed.2d 113] (*Oxford*).) As with any contract, the parties may structure their arbitration agreement as they see fit: They may limit the issues they choose to arbitrate, define the rules under which arbitration will proceed, designate who will serve as the arbitrator and even limit with whom they choose to arbitrate. (*Stolt-Neilsen S.A. v. Animalfeeds International Corp.* (2010) 559 U.S. 662, 683-684 [130 S.Ct. 1758, 176 L.Ed.2d 605] (*Stolt-Neilsen*); see *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614, 626 [105 S.Ct. 3346, 87 L.Ed.2d 444 ["as with any other contract, the parties' intentions control"]; *City of Los Angeles v. Superior Court* (2013) 56 Cal.4th 1086, 1096 [same].)

Unless the parties to an arbitration agreement have clearly and unmistakably provided otherwise, questions of arbitrability require a judicial determination. (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 [123 S.Ct. 588, 154 L.Ed.2d 491] (*Howsam*); accord, *AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 649 [106 S.Ct. 1415, 89 L.Ed.2d 648]; *City of Los Angeles v. Superior Court, supra,* 56 Cal.4th at p. 1096.) "Linguistically speaking, one might call any potentially dispositive gateway question a 'question of arbitrability . . . .'" (*Howsam,* at p. 83.) However, the United States Supreme Court has made clear that phrase is applicable only in the "kind of narrow circumstances where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and,

4

consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." (*Ibid.*)  Thus, questions of arbitrability include such "gateway issues" as the validity of the arbitration agreement, its scope and who is bound by its terms.  (See *Id.* at p. 84 [citing cases].)  Otherwise, "subsidiary matters," those "'procedural' questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator to decide."  (*Ibid.*; see *John Wiley & Sons, Inc. v. Livingston* (1964) 376 U.S. 543, 546-547 [84 S.Ct. 909, 11 L.Ed.2d 898] [arbitrator should decide whether the first two steps of grievance procedure were completed where exhaustion was prerequisite to arbitration]; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1983) 460 U.S. 1, 24-25 [103 S.Ct. 927, 74 L.Ed.2d 765 [issues of waiver, delay or defense to arbitrability are presumptively for arbitrator to decide].)

> b.  *Class arbitration*

It is now settled that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  (*Stolt-Neilsen, supra,* 559 U.S. at p. 684.)  What remains a matter of dispute in the federal and California appellate courts is who decides—the court or the arbitrator— whether the parties have agreed to arbitrate claims on a classwide basis when the agreement itself does not expressly mention class actions.  In *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [123 S.Ct. 2402, 156 L.Ed.2d 414] (plur. opn. of Breyer, J.) (*Bazzle*), a plurality of four Justices determined the question is a subsidiary matter for the arbitrator when the arbitration agreement itself is valid and the underlying dispute falls within its terms.  (*Id.* at p. 452.)  To date, no Supreme Court majority opinion has decided the issue.

In *Bazzle* the parties' agreement required arbitration of "[a]ll disputes, claims or controversies arising from or relating to this contract or the relationships which result from this contract" but did not specifically mention class claims.  (*Bazzle, supra,* 539 U.S. at p. 448.)  The South Carolina Supreme Court held state law controls when the contract is silent on class arbitration and then interpreted the contract as permitting class

arbitration. The United States Supreme Court granted certiorari to determine whether that holding was consistent with the Federal Arbitration Act (FAA). With a plurality opinion by Justice Breyer (joined by Justices Scalia, Souter and Ginsberg), the Court vacated the judgment of the South Carolina Supreme Court. Because there was no question as to the validity of the agreement or the applicability of the dispute to its terms, Justice Breyer explained, there was no gateway issue requiring a judicial determination. The only relevant question in those circumstances was "what kind of *arbitration proceeding* the parties agreed to." (*Id.* at p. 452.) That question, Justice Breyer wrote, "concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question." (*Ibid.*)[4]

Supreme Court decisions since *Bazzle* have explained the issue of who determines the class arbitration question remains undecided. (See *Stolt-Nielsen, supra,* 559 U.S. at p. 680 ["[T]he parties appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration. [Citation.] In fact, however, only the plurality decided that question. [W]e need not revisit that question here because the parties' supplemental agreement expressly assigned this issue to the arbitration panel, and no party argues that this assignment was impermissible."]; *Oxford, supra,* 133 S.Ct. at p. 2068, fn. 2 ["*Stolt-Nielsen* made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability" and "this case gives us no opportunity to do so"].)

---

[4] Justice Stevens concurred in the judgment and dissented in part. He explained his preferred disposition of the case would be to affirm the South Carolina Supreme Court's decision: "Arguably the interpretation of the parties' argument should have been made in the first instance by the arbitrator, rather than the court. [Citation.] Because the decision to conduct a class-action arbitration was correct as a matter of [state] law, and because petitioner has merely challenged the merits of that decision without claiming that it was made by the wrong decisionmaker, there is no need to remand the case to correct that possible error." (*Bazzle, supra,* 539 U.S. at p. 455 (conc. & dis. opn. of Stevens, J.) Were he to vote to affirm, however, there would be no controlling judgment. Accordingly, to avoid that outcome "and because Justice Breyer's opinion expresses a view of the case close to my own," Justice Stevens concurred in the judgment. (*Ibid.*)

Several courts, including this court in *Sandquist,* a case currently pending in the California Supreme Court,[5] have found Justice Breyer's opinion in *Bazzle* persuasive and have concluded the question is a matter of how the arbitration proceeds—a determination for the arbitrator—rather than a question of arbitrability for the court. (See *Lee v. JPMorgan Chase & Co.* (C.D. Cal. 2013) 982 F. Supp.2d 1109, 1112-1114; *Guida v. Home Savings of America, Inc.* (E.D.N.Y. 2011) 793 F.Supp.2d 611, 617-618; see generally *Texas v. Brown* (1983) 460 U.S. 730, 737 [103 S.Ct. 1535, 75 L.Ed.2d 502] [Supreme Court plurality opinion, while not binding precedent, is nonetheless "persuasive authority"]; *Thalheimer v. City of San Diego* (9th Cir. 2011) 645 F.3d 1109, 1127, fn. 5 [same].)

Other courts have found the question one of arbitrability for the court. These courts have identified the question as involving two gateway matters for which a judicial determination is required: Whether a particular claim, that is, a "class claim," is within the intended scope of the agreement, and whether a particular party can enforce or be bound by it. (See *Network Capital Funding Corporation v. Papke* (2014) 230 Cal.App.4th 503, 664, 666 (*Network Capital*); *Garden Fresh Restaurant Corp v. Superior Court* (2014) 231 Cal.App.4th 678, 688-689 (*Garden Fresh*); *Huffman v. Hilltop Companies, LLC* (6th Cir. 2014) 747 F.3d 391, 398-399; *Reed Elsevier, Inc. v. Crockett* (6th Cir. 2013) 734 F.3d 594, 598-599; *Opalinski v. Robert Half Internat. Inc.* (3d. Cir. 2014) 761 F.3d 326, 332-333.)

> 2. *The Question Whether the Parties Intended To Arbitrate Class Claims Is a Subsidiary Issue for the Arbitrator*

Those appellate cases that have rejected the reasoning of the *Bazzle* plurality have done so largely on the ground that *Bazzle* considered the question of class arbitration to be solely one of procedure, while later United States Supreme Court decisions have rejected that characterization as too simplistic. In particular, the *Stolt-Nielsen* Court explained that class arbitration is so fundamentally different from bilateral arbitration that, unlike other procedural devices, it cannot be imposed on parties without their

---

[5] See fn. 2 above.

consent.  (See *Stolt-Nielsen, supra,* 559 U.S. at p. 687 [If the question were simply a matter of "what 'procedural mode' was available to present Animal Feeds' claims [citations] . . . , there would be no need to consider the parties' intent with respect to class arbitration.  [Citation.]  But the FAA requires more."].)

We do not read *Bazzle* so narrowly or *Stolt-Nielsen* so broadly.  The Supreme Court has long recognized class action as a procedural vehicle to enforce substantive law.  (See *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 331 [100 S.Ct. 1166, 63 L.Ed.2d 427]; accord, *Duran v. United States Bank Nat. Assn.* (2014) 59 Cal.4th 1, 34 [class actions are a procedural device provided "only as a means to enforce substantive law"].)  Nonetheless, in light of fundamental differences between bilateral and class arbitration, the *Stolt-Nielsen* Court held it is appropriate to require the parties to agree to class arbitration rather than permitting the arbitrator to impose such a procedure unilaterally.  (*Stolt-Nielsen, supra,* 559 U.S. at pp. 685-687.)  As the *Stolt-Nielsen* Court strongly implied in distinguishing the two issues, however, it is one thing for a court to decide whether the parties consented to class arbitration, as the FAA requires (*id.* at p. 687), and quite a different matter to hold the interpretation of the parties' intent on that question is somehow a gateway issue for the court, even when the underlying dispute plainly falls within the scope of a valid arbitration agreement.  *Stolt-Nielsen* expressly did not decide that question.  (*Id.* at p. 680.)

Properly framed, the question left open in *Stolt-Nielsen, supra,* 559 U.S. 662, as well as in *Oxford, supra,* 133 S.Ct. 2064, is whether permitting or prohibiting class arbitration is dispositive of whether the arbitration proceeds at all—the essence of the "narrow gateway" issue:  Plainly, it is not.  If the parties bargained for arbitration in accordance with a valid arbitration agreement and the underlying dispute falls within that agreement, there is no longer a question whether the arbitration proceeds.  It is not unreasonable under those circumstances for those parties to expect the arbitrator to decide the question whether it may proceed on a classwide basis in accordance with their arbitration contract.  (See *Howsam, supra,* 537 U.S. at p. 84; *Bazzle, supra,* 539 U.S. at p. 453.)  In that case, the question of class arbitration effectively "grow[s] out of the

8

dispute and bear[s] on its final disposition," making it a question for the arbitrator to determine, not a court. (*Howsam,* at p. 84; *Bazzle,* at p. 453.)

Cedars contends *Bazzle* is distinguishable because it relied on "sweeping language" in the arbitration agreement suggesting the parties had agreed the dispute over class arbitration would be decided by the arbitrator: "The parties agreed to submit to the arbitrator '*all* disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract.' [Citation.] And the dispute about what the arbitration contract in each case means (*i.e.,* whether it forbids the use of class arbitration procedures) is a dispute 'relating to this contract' and the resulting 'relationships.' Hence, the parties seem to have agreed that an arbitrator, not a judge, would answer the relevant question." (*Bazzle, supra*, 539 U.S. at p. 451.)

Viewed in isolation, such language could be read to suggest a finding the parties had expressly agreed to have the arbitrator resolve the question of class arbitration. The context of the statement, however, confirms the *Bazzle* plurality did not rely on such an interpretation of the contract in reaching their decision. Indeed, in the several paragraphs immediately following this language, Justice Breyer identified the narrow, gateway questions that parties reasonably assume a court will decide, and then explained "[t]he question here—whether the contracts forbid class arbitration—does not fall within this narrow exception. It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." (*Bazzle, supra,* 539 U.S. at p. 452.) Had the *Bazzle* plurality simply found an express agreement to delegate the decision to this arbitrator, it would have no need to discuss, and distinguish, gateway issues of arbitrability from subsidiary issues of how the arbitration proceeds. (See *id.* at pp. 452-453.)

The Fourth District's contrary holding in *Network Capital, supra,* 230 Cal.App.4th 503 miscasts the issue. There, the court found the class arbitration question akin to determining who is bound by the arbitration agreement, a classic question of arbitrability. (See *id.* at p. 668 ["[c]lass [a]rbitration [q]uestion involves the scope of the parties' arbitration agreement because it requires the decision maker to determine whose claims

9

the parties agreed to arbitrate—only the named plaintiff's claims against the defendant, or the claims of numerous other absent, but similarly situated claimants against the defendant"]; see also *John Wiley & Sons, Inc. v. Livingston, supra,* 376 U.S. at pp. 546-547 [issue of who is bound by arbitration agreement is one of arbitrability for court to decide absent agreement to contrary]; *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943 [115 S.Ct. 1920, 131 L.Ed.2d 985] (*First Options*) [same].) However, the *Network Capital* court painted what is supposed to be a narrow question of arbitrability with too broad a brush. A plaintiff bound by a valid arbitration agreement may only be a proper representative in arbitration for those similarly bound by the arbitration agreement. (See generally *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 [to be adequate representative, class representative must have "claims or defenses typical of th[e] class" and be able to adequately represent the class]; *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1078, 1089 [same].) Thus, contrary to *Network Capital's* suggestion, the question that we hold is reserved for the arbitrator does not involve whether the arbitration proceeds or against whom it proceeds (cf. *First Options,* at p. 943), but only in what manner it proceeds. (*Bazzle*, *supra,* 539 U.S. at p. 452.)

    *Garden Fresh, supra,* 231 Cal.App.4th 678, from a different division of the Fourth District, similarly relies too heavily on the Court's identification of the differences between bilateral and class arbitration, reading the Supreme Court cases since *Bazzle* as "'giv[ing] every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one.'" (See *id.* at p. 681, quoting *Reed Elsevier, Inc. v. Crockett, supra,* 734 F.3d 594, 598.) We agree the differences between bilateral and class arbitration can be profound, and we do not minimize them here. (See *Stolt-Nielsen, supra,* 559 U.S. at pp. 687-688 [criticizing the dissent for minimizing the "crucial differences" between class and bilateral arbitration].) However, as explained, we do not share the *Garden Fresh* court's view of the rule to be gleaned from the Supreme Court cases decided since *Bazzle*. Any due process concerns as to the effect of those differences between bilateral and class arbitration are resolved by requiring the parties'

consent to class arbitration. (*Stolt-Nielsen,* at p. 686.) In addition, we take issue with *Garden Fresh's* observation that the "high stakes" of class arbitration are simply too significant to entrust to an arbitrator without the benefit of judicial review. (See *Garden Fresh,* at p. 687, citing *Moncharsh v. Heily & Blasé* (1992) 3 Cal.4th 1, 11 ["with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law"] and *AT&T Mobility v. Concepcion* (2011) 131 S.Ct. 1740, 1752 ["absence of multilayered review [from arbitrator's decision] makes it more likely that errors will go uncorrected"].) For better or worse, the absence of complete judicial review is part of the arbitration bargain. If the arbitration agreement is valid and the underlying dispute within its scope, the parties bargained for the arbitrator to decide their dispute, including the interpretation of their contract. The argument that removal of this question from the arbitrator is necessary because of the high consequences of an erroneous ruling disregards the increasingly important role that arbitration plays in the dispute resolution process.

In sum, if the arbitration agreement is valid and the underlying dispute within its scope, the question whether the parties agreed to class arbitration is a subsidiary matter for the arbitrator, not a gateway issue for judicial determination. In light of our holding, we do not reach, and leave for the arbitrator, whether the parties here agreed to class arbitration.[6]

---

[6] We also do not reach the merits of Rivers's arguments the court erred in compelling arbitration of her individual claims on the ground the agreement was unconscionable. Because that ruling compelling arbitration is not a final, appealable order, we lack jurisdiction to consider it. (*Abramson v. Juniper Networks, Inc., supra,* 115 Cal.App.4th at p. 648.)

**DISPOSITION**

The order is reversed, and the matter remanded to the trial court with directions to submit the question of class arbitration to the arbitrator. Each party is to bear her and its own costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

FEUER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.