Filed 8/18/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| UNIVERSAL PROTECTION SERVICE, LP et al., | C078557 |
| Petitioners, | (Super. Ct. No. CV14334) |
| v. | |
| THE SUPERIOR COURT OF YOLO COUNTY, | |
| Respondent; | |
| MICHAEL PARNOW et al. | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING in mandate. Timothy L. Fall, Judge. Petition denied.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Jason W. Kearnaghan, Cassidy M. English and Michael T. Campbell for Petitioners.

No appearance for Respondent.

Bramson, Plutzik, Mahler & Birkhaeuser, Robert M. Bramson, Joshua Boxer; Tower Legal Group and James Clark for Real Parties in Interest.

1

In this employment case we deny a mandamus petition seeking to set aside an order compelling the employer to submit to arbitration--based on employment agreements drafted by the employer--including submitting to the arbitrator the issue whether class action relief is encompassed by the agreements. As we will explain, we conclude that the agreements' incorporation by reference of the American Arbitration Association's National Rules for the Resolution of Employment Disputes (AAA Rules) vests the arbitrator with the power to decide the disputed issue.

## BACKGROUND

Michael Parnow, Shawn Lisenby, Bob Andrade, Gabriel Bautista, and Saiyaz Abdul (plaintiffs) filed a class action against Universal Protection Service, LP and Universal Services of America, Inc. (collectively, UPS).

Plaintiffs alleged they worked as armed security guards at the Yolo County Superior Court, under the employ of UPS. As part of their job, they have to provide equipment, such as guns, handcuffs, and radios, and have to pay the costs to maintain their certification to work as armed guards, but they are not reimbursed for equipment or training costs. When they filed an administrative complaint as required by the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.), they were all fired except plaintiff Lisenby, and none were paid their wages. The complaint defined a "Tools and Equipment Class" and a "Termination Class."

On April 10, 2014, the trial court granted a stipulated stay, pending the outcome of a then-pending case in the California Supreme Court.

After the Supreme Court issued its decision (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*)), plaintiffs filed an amended complaint as a "representative action" under PAGA and also petitioned to compel class-wide

2

arbitration.[1]  An attached arbitration agreement *drafted by UPS* and signed by all plaintiffs, after describing the employment as at-will, provides in part:

> "I further expressly acknowledge and agree that, to the fullest extent allowed by law, any controversy, claim or dispute between me and the Company . . . relating to or arising out of my employment or the cessation of that employment will be submitted to final and binding arbitration before a neutral arbitrator . . . for determination in accordance with the American Arbitration Association's [AAA] National Rules for the Resolution of Employment Disputes as the exclusive remedy for such controversy, claim or dispute."

The agreement lists a number of particular types of disputes that are covered, including "any state or local statutes and ordinances relating to wage and hour or wage payment matters."  It excludes employees covered by collective bargaining agreements, and disputes involving workers compensation and unemployment insurance, among others.  It also provides:  "This bilateral arbitration agreement is to be construed as broadly as is permissible under applicable law."

UPS answered with a general denial, coupled with various affirmative defenses, including that the class action claims were barred by the arbitration agreement.  UPS also filed a cross-complaint seeking a declaration that (1) the trial court, not the arbitrator, should decide whether class action relief was barred by the arbitration agreement, and (2) that the arbitration agreement barred class actions.

After plaintiffs answered the cross-complaint, UPS moved to compel individual arbitration and stay the proceedings.  Plaintiffs opposed the motion, in part arguing that under AAA Rules, whether class arbitrations were permitted was a matter for the arbitrator to decide.  Plaintiffs sought and obtained judicial notice of the AAA Rules.

The trial court denied the motion to compel individual arbitration, and stayed the suit pending the arbitration.

---

[1] *Iskanian* held class wage and hour claims could be compelled into arbitration, but that PAGA claims could not.  (See *Iskanian*, *supra*, 59 Cal.4th at pp. 359-360.)

In response to UPS's mandamus petition, we stayed the arbitration, and issued an alternative writ of mandate.

## DISCUSSION

We agree with UPS that the issue to be decided is whether the arbitration agreement in this case clearly and unmistakably vested the arbitrator with the power to decide whether the agreement authorizes class arbitration.[2] We agree with the parties that because the answer turns on the language of the employment agreement and referenced AAA Rules that are not disputed, we review the trial court's order compelling arbitration de novo. (See *Fagelbaum & Heller LLP v. Smylie* (2009) 174 Cal.App.4th 1351, 1360.)

Generally, "courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability.' " (*BG Group, PLC v. Republic of Argentina* (2014) 572 U.S. __, __ [188 L.Ed.2d 220, 228]; see *Oxford Health Plans LLC v. Sutter* (2013) 569 U.S. __, __ [186 L.Ed.2d 113, 119, fn. 2] [gateway questions of arbitrability are "presumptively for courts to decide" absent " 'clear[] and unmistakabl[e]' evidence that the parties wanted an arbitrator to resolve the dispute"]; *Garden Fresh Restaurant Corp. v. Superior Court* (2014) 231 Cal.App.4th 678, 685, 684-685 (*Garden Fresh*).)

---

[2] Another appellate court recently resolved this issue adversely to UPS, in a case involving other employees of UPS who signed similar employment agreements providing for arbitration of disputes. (*Universal Protection Service, LP v. Superior Court* (2015) 234 Cal.App.4th 1128, review granted June 11, 2015, S225450 (*Universal*).) In the lead case of *Sandquist v. Sebo Automotive, Inc.* (2014) 228 Cal.App.4th 65, review granted July 22, 2014, S220812, our high court is expected to decide: "Does the trial court or the arbitrator decide whether an arbitration agreement provides for class arbitration if the agreement itself is silent on the issue?" Briefing by the parties was completed in that case on April 2, 2015. We note that in our view, an agreement that incorporates by reference terms that address the question at issue, such as the agreements' incorporation of the AAA Rules in the instant case, is not actually a silent agreement. We add that contrary to plaintiffs' view, *Universal* cannot collaterally estop UPS in this action, because it is not final. (See *Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 109 ["it is a well-established principle of law that a grant of review by the Supreme Court nullifies the opinion and causes it to no longer exist"].)

4

Whether there is clear and unmistakable evidence of the parties' intent to vest the arbitrator with the power to decide "gateway" issues reflects a heightened standard of proof.  (*Ajamian v. CantorCO2e, L.P*. (2012) 203 Cal.App.4th 771, 782, 784 (*Ajamian*).)  Thus, "a contract's silence or ambiguity about the arbitrator's power [to decide a gateway question] cannot satisfy the clear and unmistakable evidence standard."  (*Id.* at p. 782.)

Throughout its briefing, UPS argues that the fact the agreement does not use the term "class action" is dispositive on the issue of whether the agreement evidences a clear and unmistakable intent to vest the arbitrator with the disputed power.  We disagree with UPS's view that the agreement is silent on the question merely because the agreement *itself* does not use the specific term "class action."

An agreement to arbitrate is interpreted like any other contract, consistent with the Federal Arbitration Act (FAA), which is " 'at bottom a policy guaranteeing the enforcement of private contractual arrangements.' "  (*Cable Connection, Inc. v. DIRECTV, Inc*. (2008) 44 Cal.4th 1334, 1353.)  " '[T]he basic objective in this area is . . . to ensure that commercial arbitration agreements, like other contracts, " 'are enforced according to their terms,' " [citation], and according to the intentions of the parties.' "  (*Ibid*.; see *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __, __ [179 L.Ed.2d 742, 751] [under FAA, "courts must place arbitration agreements on an equal footing with other contracts [citation] and enforce them according to their terms"].)

Under settled principles of California law, " 'the parties may incorporate by reference into their contract the terms of some other document. . . .  For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.' "  (*Williams Constr. Co. v. Standard-Pacific Corp*. (1967) 254 Cal.App.2d 442, 454; see *Avery v. Integrated Healthcare Holdings, Inc*. (2013) 218 Cal.App.4th 50, 66.)  This rule has long been

5

applied in cases where a document referenced by an agreement provides for arbitration. (See, e.g., *Chan v. Drexel Burnham Lambert, Inc*. (1986) 178 Cal.App.3d 632, 639 ["an agreement need not *expressly* provide for arbitration, but may do so in a secondary document which is incorporated by reference"], quoted with approval on this point by *Baker v. Osborne Development Corporation* (2008) 159 Cal.App.4th 884, 895.)  For example, in *King v. Larsen Realty, Inc*. (1981) 121 Cal.App.3d 349, an application for membership in a local board of realtors provided that the applicants agreed to abide by the bylaws, which incorporated the California Association of Realtors Arbitration Manual, and the court held that such reference was a part of the agreement the applicants signed, therefore they could be compelled into arbitration.  (*Id*. at pp. 353-357.)  "A secondary document becomes part of a contract as though recited verbatim when it is incorporated into the contract by reference provided that the terms of the incorporated document are readily available to the other party."  (*Id*. at p. 357.)

The employment agreement states that disputes "will be submitted to final and binding arbitration before a neutral arbitrator . . . for determination in accordance with the [AAA Rules]."  UPS--the drafter of the arbitration agreement at issue--does not contend that the content of the referenced AAA Rules were not readily available to it at the time UPS presented its own employment contracts to the several plaintiffs.

Paragraph No. 1 of the AAA Employment Arbitration Rules and Mediation Procedures (Employment Rules) provides in part:  "The parties shall be deemed to have made these rules as part of their arbitration agreement whenever they have provided for arbitration by the [AAA.]"  Therefore, the parties made the Employment Rules part of their employment contract.  Paragraph No. 6(a) of those rules provides:  "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."

6

The AAA Supplementary Rules for Class Arbitrations (Class Rules) apply "to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules." They provide in part: "Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award'). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award."

Thus, when an employee signed the agreement drafted by UPS, he or she--if interested--would have been directed to the AAA Rules referenced by the agreement and described above, including the rule that the arbitrator would decide the gateway issue of whether class arbitration was appropriate, and issue a reasoned, partial final award, and stay the proceedings to allow that decision to be challenged in court. Thus, those rules are a part of the employment agreement.

The authorities tendered by UPS to avoid this conclusion are either distinguishable or unpersuasive or both.

In *Garden Fresh*, the agreement at issue *was* silent on the issue of whether the arbitrator or court would decide the scope of the arbitration. (*Garden Fresh*, *supra*, 231 Cal.App.4th at pp. 684-689.) There was no need to address the incorporation rule in that case. In *Ajamian*, *supra*, 203 Cal.App.4th 771--where the *employee* sought to avoid arbitration--the court "seriously question[ed]" whether incorporation of AAA rules provided clear and unmistakable evidence that an employer and employee intended to submit the gateway issue of unconscionability (i.e., enforceability) to the arbitrator. (*Id.* at p. 790.) But the observation was dicta, because the court found the agreement at issue

7

"did not mandate that AAA rules would *necessarily* apply. Instead, the arbitration clause stated that the arbitration would be held according to [the National Association of Securities Dealers] rules, AAA rules, *or* the rules of 'any other alternative dispute resolution organization' selected by [defendant] in its sole discretion." (*Id*. at p. 791.) Furthermore, other provisions in the agreement suggested that a court (as opposed to an arbitrator) might find contractual provisions unenforceable. (*Id*. at pp. 791-792.) Because the parties' agreement in this case does not have these ambiguities, *Ajamian* is inapposite.

Our conclusion is not novel as a matter of California law. *Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249 acknowledged that "Ordinarily, the parties' agreement to arbitrate in accordance with [rules giving the arbitrator authority to determine jurisdiction and arbitrability] 'is clear and unmistakable evidence of the intent that the arbitrator will decide whether a [c]ontested [c]laim is arbitrable.' " (*Id*. at pp. 1256-1257, quoting *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 557; see *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1442 [agreement referenced Judicial Arbitration and Mediation Service rules; held, " 'when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.' [Citations.]"]; *Rodriguez v. American Technologies, Inc*. (2006) 136 Cal.App.4th 1110, 1123; cf. *Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1192-1194 [declining to extend the principle where the purportedly-incorporated rules did not exist at the time the agreement was signed; "At least in [*Rodrigues* and *Dream Theater*], the parties could go *look up* the AAA rules to which they were agreeing beforehand, and see that, yes, they were conferring on arbitrators the power to decide if a dispute was arbitrable"].) However, the agreement in *Hartley* ambiguously *also* provided that a court would decide gateway issues, and therefore could not be deemed a clear agreement to arbitrate such issues.

8

(*Hartley*, at pp. 1257-1258.)  Further, the party seeking to avoid arbitration was the consumer, the party with less bargaining power.  (*Id*. at p. 1252 [elderly widow suing precious metals dealer].)  Given those facts, *Hartley* properly declined to find an effective delegation to the arbitrator of power to decide gateway questions in that case.

Some federal decisions appear to have rejected the conclusion we reach, but they did not fully apply the contractual incorporation rule.  The leading federal case relied on by UPS, *Reed Elsevier, Inc. v. Crockett* (6th Cir. 2013) 734 F.3d 594 (*Reed*), rested on the view that because the agreement itself did not mention class arbitration, it did not clearly and unmistakably rebut the presumption that a court decides gateway issues, and construed the agreement to be silent on that question.  *Reed* did not read the agreement to incorporate AAA Class Rules, because it mistakenly thought the rules provided they were irrelevant to the scope of arbitration.[3]  (*Id*. at pp. 599-600.)  Other cases cited by UPS, too, either do not address or reject the incorporation rule.  (See, e.g., *Opalinski v. Robert Half Int'l, Inc*. (3d Cir. 2014) 761 F.3d 326; *Chesapeake Appalachia, LLC v. Suppa* (N.D. W.Va. March 4, 2015) 2015 U.S. Dist. Lexis 26166; *Chesapeake Appalachia, LLC v. Scout Petroleum II, L.P.* (M.D. Pa. Oct. 16, 2014) 73 F.Supp. 488; contra *Chesapeake Appalachia, LLC v. Burkett* (M.D. Pa. Oct. 17, 2014) 2014 U.S. Dist. LEXIS 148442 [because agreement incorporated AAA rules, the arbitrator decides arbitrability questions].)

---

[3]  One passage in the Class Rules provides:  "In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis."  This clause directs the *arbitrator*, not a court, to disregard AAA rules in deciding the merits of the class arbitrability question.  If anything, this clause appears to bolster plaintiffs' claim.  Unfortunately, *Reed* missed this point and states:  "But the [Class Rules] expressly state that one should 'not consider the existence' " of any AAA rules.  (*Reed*, *supra*, 734 F.3d at pp. 599-600.)  By omitting "the arbitrator" from the rule quoted and substituting "one" in the text, *Reed* materially obscures the meaning of that Class Rule, in our view.

9

In contrast, federal courts *in California* have concluded that referencing the AAA rules reflects an intention to submit the gateway issue of class arbitrability to the arbitrator. (See *Yahoo! Inc. v. Iversen* (N.D.Cal. 2011) 836 F.Supp.2d 1007, 1010-1012.) Indeed, the Ninth Circuit, collecting cases, has observed that "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. [Citations.]" (*Oracle Am., Inc. v. Myriad Group A.G.* (9th Cir. 2013) 724 F.3d 1069, 1074 (*Oracle*) [applying principle in a case involving the United Nations Commission on International Trade Law [UNCITRAL] arbitration rules].) We find those to be the better-reasoned federal decisions.[4] Although UPS points out many similar cases did not involve class actions, that is an irrelevant distinction; the cases we rely on involved the requirement that clear and unmistakable language must be used to vest an arbitrator with authority to decide gateway issues, the same point at issue in this case.

Nor are we persuaded that the reference in the employment agreement to a "bilateral arbitration agreement" *precludes* expansion of the agreement to encompass class claims. As the drafter of the agreement, it was within UPS's power to either clearly designate the court as the decider or leave the matter truly silent. It did not do so, but instead designated AAA Rules to govern disputes. Its unexpressed beliefs or wishes do not change the words it chose--and that plaintiffs accepted.

In short, plaintiffs' and UPS's agreement to conduct their arbitration under the AAA Rules constitutes clear and unmistakable evidence of their shared intent that the arbitrator decide whether it permits arbitration of class claims.

---

[4] *Oracle* declined to decide an issue not before it, that is, whether incorporation should be applied against consumers, as opposed to "sophisticated parties" engaged in commercial transactions. (*Oracle*, *supra*, 724 F.3d at p. 1075 & fn. 2.)

## DISPOSITION

The alternative writ is discharged, the stay previously issued is vacated, and the petition for writ of mandate is denied.  Plaintiffs shall recover their costs in this proceeding.  (See Cal. Rules of Court, rule 8.493(a)(1)(A).)


                              DUARTE                , J.



We concur:



        RAYE              , P. J.



        ROBIE             , J.



11