NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0611n.06

Case Nos. 14-6036/6040/6041/6042/6044

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SKYLAR GUNN, | No. 14-6036 | ) |
| | | ) |
| Plaintiff-Appellee, | | ) |
| | | ) |
| v. | | ) |
| | | ) |
| NPC INTERNATIONAL, INC., | | ) |
| | | ) |
| Defendant-Appellant. | | ) |
| _____/ | | ) |
| WILLIAM HARRIS, | No. 14-6040 | ) |
| | | ) |
| Plaintiff-Appellee, | | ) |
| | | ) |
| v. | | ) |
| | | ) |
| NPC INTERNATIONAL, INC., | | ) |
| | | ) |
| Defendant-Appellant. | | ) |
| _____/ | | ) |
| CANDACE JOWERS, | No. 14-6041 | ) |
| | | ) |
| Plaintiff-Appellee, | | ) |
| | | ) |
| v. | | ) |
| | | ) |
| NPC INTERNATIONAL, INC., | | ) |
| | | ) |
| Defendant-Appellant. | | ) |
| _____/ | | ) |

FILED
Aug 28, 2015
DEBORAH S. HUNT, Clerk

| | | | |
|---|---|---|---|
| ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE | | O P I N I O N | |

TIFFNEY PENLEY, et al.,      No. 14-6042 )

     Plaintiffs-Appellees,

v.

NPC INTERNATIONAL, INC.,

     Defendant-Appellant.

_____/ )

LEAH REDMOND,      No. 14-6044 )

     Plaintiff-Appellee,

v.

NPC INTERNATIONAL, INC.,

     Defendant-Appellant.

_____/ )

Before:  McKEAGUE and GRIFFIN, Circuit Judges; and DRAIN, District Judge.[*]

**McKEAGUE, Circuit Judge.**  These five consolidated appeals present a common question:  whether the defendant employer waived its contractual right to insist on arbitration of employees' claims for unpaid compensation by failing to timely assert the right.  The district court answered in the affirmative, finding the employer's litigation actions were completely inconsistent with reliance on the arbitration agreement and resulted in actual prejudice to the plaintiffs.  The district court denied the employer's motions to compel arbitration in all five

---

[*] Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

cases. On de novo review, we find that the district court correctly considered the relevant factors as defined in our caselaw. We therefore deny defendant's claims of error and affirm.

**I**

Defendant NPC International, a Kansas corporation, operates Pizza Hut Restaurants in numerous states across the country. In January 2013, five separate actions were commenced against NPC in the Western District of Tennessee. All five were assigned to the same judge. The plaintiffs in all five cases are represented by the same counsel. Each of the actions asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for unpaid minimum wages and overtime compensation by a different class of current or former employees of NPC. Plaintiff Skylar Gunn brought action on behalf of herself and other similarly situated tipped employees, also classified as waiters/waitresses/servers; plaintiff William Harris proceeded on behalf of cooks; Candace Jowers on behalf of delivery drivers; Tiffney Penley on behalf of shift managers; and Leah Redmond on behalf of customer service representatives. In each case, NPC is alleged to have established uniform policies and practices that denied the named plaintiff and other similarly situated employees compensation they were entitled to, in violation of the FLSA.

In each of the five cases, NPC took various responsive actions, but it was not until April 2014 that it first asserted that the claims were subject to mandatory arbitration under the plaintiffs' employment contracts by moving the court to dismiss the actions for lack of jurisdiction or alternatively, to compel arbitration. The district court considered the motions in light of the litigation activities of the parties in all five cases as a whole. The court concluded that NPC had "slept on its rights" too long; that its filing of several dispositive and nondispositive motions and participation in a scheduling conference were actions completely inconsistent with reliance on the arbitration agreement; and that plaintiffs would suffer unfair

prejudice in expense of time and money if they were now compelled to submit their claims to arbitration. The court thus held that NPC had waived its right to compel arbitration and denied NPC's motions to dismiss. The court also denied NPC's motions for reconsideration and these appeals followed.

## II

The district court's denial of NPC's motion to compel is immediately appealable, 9 U.S.C. § 16(a)(1)(B), and is reviewed de novo. *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 716 (6th Cir. 2012). There is a strong presumption in favor of enforcing arbitration agreements. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005). Therefore, "waiver of the right to arbitration is not to be lightly inferred." *Id.* A party may waive the right to arbitration by engaging in a course of conduct completely inconsistent with reliance on an arbitration agreement or delaying assertion of the right to such an extent that the opposing party incurred actual prejudice. *Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 827–28 (6th Cir. 2015); *Johnson Associates*, 680 F.3d at 717; *Hurley v. Deutsche Bank Trust Co.*, 610 F.3d 334, 338 (6th Cir. 2010). "Both inconsistency and actual prejudice are required." *Shy*, 781 F.3d at 828.

NPC challenges the district court's holding that both requirements are satisfied in this case. NPC contends its actions were not "*completely* inconsistent" because, despite the passage of almost fifteen months, the litigation really had not progressed very far, and plaintiffs' prejudice was minimal in that discovery had not even commenced before NPC raised its right to arbitration. We are not persuaded.

The parameters of our scrutiny are well defined by three recent Sixth Circuit rulings, cited above. The district court relied on *Johnson Associates* and *Hurley*, where we affirmed

denials of motions to compel arbitration. In *Shy*, decided since the district court's ruling, we vacated the denial of a motion to compel. Comparison of all three decisions confirms the correctness of the district court's ruling in this case.

In *Hurley*, the defendant had participated in litigation for two years before asserting its right to arbitration. The plaintiffs' actual prejudice consisted of their participation in extensive discovery, defending against four summary judgment motions, and being subjected to a change in venue at the defendant's request. *Hurley*, 610 F.3d 338–40. In *Johnson Associates*, the defendant delayed eight months before raising the issue of arbitration. In the meantime, the defendant's participation in litigation consisted of filing an answer without raising arbitration as an affirmative defense, engaging in settlement negotiations, participating in a scheduling conference, and serving discovery requests. Again, even absent a showing of "substantive prejudice," we held "actual prejudice" was made out by the delay and expenses incurred. *Johnson Associates*, 680 F.3d at 718–20.

In *Shy*, on the other hand, we vacated the district court's denial of a motion to compel where arbitration was first raised ten months after a third party moved to intervene in existing litigation, but promptly after the court granted intervention and the intervenor's complaint was filed. Distinguishing *Johnson Associates*, we held that the defendant's "pre-litigation" (i.e., before intervention was allowed) conduct was not inconsistent with reliance on arbitration, that the defendant did not actively pursue litigation during the pendency of the motion to intervene, and that consequently, the intervenor did not incur unnecessary expenses amounting to actual prejudice. *Shy*, 781 F.3d at 829–30.

Here, we assume for present purposes—although the point is not conceded by plaintiffs—that the employment applications that form the basis for plaintiffs' employment

contracts contain an arbitration clause broad enough to cover the claims asserted in these five cases.[1] Given that assumption, it follows that NPC enjoys the presumption in favor of enforcing the arbitration agreements. Yet, NPC undeniably waited almost fifteen months before raising the arbitration issue in any of the five cases. Comparing the relevant facts in the above three cases addressing waivers of the right to arbitrate, we find the present facts practically indistinguishable from those in *Johnson Associates.* Here, in fact, the length of delay is much greater and the resulting prejudice arguably greater. During the period of delay, NPC, not unlike the defendant in *Johnson Associates*, engaged in settlement negotiations, participated in a scheduling conference for all five cases, and filed several motions (some dispositive) without ever mentioning the arbitration agreement.

Moreover, it was only after NPC obtained unfavorable rulings on its initial dispositive motions that it moved to dismiss or compel arbitration. This is a factor weighing in favor of finding waiver, for it suggests that NPC's delay, instead of being attributable to an innocent or otherwise excusable purpose, was deliberately motivated by some perceived tactical advantage. *See Hurley*, 610 F.3d at 339; *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002). Indeed, the timing of NPC's tardy assertion of its right tends to corroborate the district court's conclusion, in denying reconsideration, that NPC was "employing dilatory tactics and creating expense for the Plaintiffs."

Nor has NPC persuasively rebutted this conclusion on appeal. Its only explanation is that Sixth Circuit law was materially unsettled until November 5, 2013, when *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013), was decided. In *Reed Elsevier*, the question whether an arbitration agreement permits classwide arbitration was held to be a "gateway matter" for the

---

[1] In fact, plaintiffs' counsel averred in oral arguments that more than half of the potential opt-in plaintiffs' employment contracts do not contain arbitration clauses.

court, not the arbitrator, to decide, unless the parties clearly and unmistakably provided otherwise. *Id.* at 599. But the pendency of this question until November 2013 hardly justifies the delay. It was not cited by NPC as justification below; it does not explain why NPC waited five more months after *Reed Elsevier* was decided before raising the arbitration issue; and it does not explain why NPC should not, in any event, be required to advise the plaintiffs and the court of its intent to rely on the arbitration clause if it wished to preserve the right. Absent any semblance of a colorable justification, we have no reason to question the district court's conclusion that NPC's course of conduct was deliberately chosen to reap some tactical advantage at odds with reliance on the arbitration clause.

NPC maintains nonetheless that its delay caused plaintiffs minimal prejudice. *Johnson Associates* is said to be distinguishable in that more discovery had been undertaken during eight months of litigation before the right to arbitration was asserted. Here, in contrast, little if any discovery was conducted. True enough, but here NPC deliberately undertook a course of conduct inconsistent with reliance on arbitration for almost twice as long as the defendant in *Johnson Associates* and the harm stemming from this longer protraction of proceedings was commensurately greater than in *Johnson Associates*.

Nor do plaintiffs rely on delay alone to demonstrate actual prejudice. Their opposition to NPC's motion to compel arbitration is supported by the declaration of their lead counsel, attesting to the fact that roughly $20,000 in expenses had been incurred on plaintiffs' behalf in this litigation before the motions to compel were filed, some of which would not have been necessary had NPC timely raised the arbitration issue.[2] What we held in *Johnson Associates* is

---

[2] Indeed, the five district court dockets show that, cumulatively, over 370 docket entries were made before NPC first asserted the right to arbitration in any of the cases. Although more than 200 of these entries consist of notices of opt-in plaintiffs' consents to join the actions, the dockets clearly evidence substantial litigation activity after the complaints were filed before arbitration was first raised.

no less true in this case: "Because [defendant's] actions were completely inconsistent with any reliance on its right to arbitration, and because [defendant's] belated assertion of that right caused plaintiffs actual prejudice in the form of unnecessary delay and expense, we hold that [defendant] waived its right to arbitration." *Johnson Associates*, 680 F.3d at 721. *See also O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 357–59 (6th Cir. 2003) (actual prejudice deemed established even though defendant raised arbitration issue less than three months after complaint was filed because defendant's pre-litigation negotiations influenced plaintiff's delay in filing claim until after 180-day limitation period had run).[3]

The instant facts stand in marked contrast to those presented in *Shy*, 781 F.3d at 829–30, where defendant Navistar was held not to have waived its right to arbitration. In *Shy*, we explicitly distinguished *Johnson Associates*, holding that Navistar did not delay in asserting its right to arbitration once the complaint was filed; that Navistar's pre-intervention conduct was not inconsistent with reliance on the right; that Navistar had not caused the intervenor to incur unnecessary expenses by actively participating in pre-intervention proceedings; and that the intervenor did not suffer cognizable prejudice as a result of Navistar's "allegedly untimely request for arbitration of a dispute that was not subject to arbitration in the first place." *Id.* at 830.

Accordingly, we find the district court's denials of NPC's motions to compel arbitration entirely consistent with our precedents.

---

[3] The delay occasioned by NPC's interlocutory appeal can only have exacerbated the prejudice sustained by plaintiffs. We note that the question of equitable tolling of the FLSA statute of limitations during the pendency of this appeal was raised below and the district court denied relief without prejudice, for lack of jurisdiction. The question is not before us and we express no opinion on the applicability of equitable tolling.

## III

Apart from the merits of the above analysis, NPC also challenges its premise. Because all five cases present putative "collective actions" under the FLSA that have not yet been certified for class treatment, NPC contends it is error not to evaluate the waiver issue individually as to each plaintiff. That is, instead of measuring the significance of NPC's delay in asserting its right to arbitration and the resulting prejudice solely from the dates the complaints were filed, NPC contends these factors should be evaluated for each "opt-in" plaintiff from the date he or she opted in.

This issue was first raised in NPC's motions to alter or amend the orders denying the motions to compel arbitration under Fed. R. Civ. P. 59(e) or to grant relief from the orders under Fed. R. Civ. P. 60(b). The district court denied the "motions for reconsideration" for three reasons. First, the court held the motions were not a proper vehicle to raise a new legal issue that could have been raised prior to the original rulings. Second, the court noted that NPC failed to identify any controlling or persuasive authority for the proposition that the waiver issue must be determined on an individualized plaintiff-by-plaintiff basis. Third, the court held that adopting NPC's approach would undermine the remedial design of the FLSA collective action mechanism, i.e., efficient vindication of employees' rights. Again, we find no fault in the district court's reasoning.

The district court looked to our decision in *Manasher v. NECC Telecom*, 310 F. App'x 804 (6th Cir. 2009), for guidance. In *Manasher*, defendant NECC was held to have waived its right to arbitrate claims asserted in a putative class action because it failed to plead arbitration as an affirmative defense and actively participated in litigation for almost a year before asserting the right, causing prejudice in the form of unnecessary delay and expense. *Id.* at 806. We rejected

NECC's argument that its delay in asserting the right should be measured, not from the date of the original complaint, but from the date of the amended complaint, when plaintiffs added two new claims. We held "that the additional claims contained in the amended complaint did not substantially alter the scope or theory of this matter in such a way as to revive the defendant's right to compel arbitration." *Id.* at 807.

Although *Manasher* involved a Rule 23 class action, not a collective action under the FLSA, the district court concluded that the rationale employed in *Manasher* applied with equal force in this case. Indeed, the "similarly situated" standard under which plaintiffs enjoy the advantages of collective proceedings under the FLSA is actually "less stringent" than the requirements for joinder in Rule 23 class actions. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009).

Here, NPC was on notice of the nature of plaintiffs' claims in all five cases by January 2013. NPC knew then that all five actions were brought under the FLSA as collective actions on behalf of "similarly situated" employees for unpaid compensation allegedly denied them pursuant to NPC's uniform policies and practices. Yet NPC made the conscious decision not to assert the arbitration issue until April 2014. By then, more than two hundred opt-in plaintiffs had filed their consents to join in the collective actions against NPC at different times as the litigation progressed. Because all five cases were brought in the same court and assigned to the same judge, and all plaintiffs are represented by the same counsel and assert claims for violations of FLSA rights pursuant to the same uniform policies, the effects of NPC's failure to timely raise arbitration—in unnecessary delay and expense—is effectively the same for all plaintiffs, irrespective of when they opted in. In relation to the issues posed by the waiver question, all plaintiffs are "similarly situated." Here too, as we observed in *O'Brien*, "it is clear that plaintiffs

are similarly situated when they suffer from a single FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585. Here too, as in *Manasher*, each opt-in plaintiff's filing of consent to join "did not substantially alter the scope or theory of this matter in such a way as to revive the defendant's right to compel arbitration." *Manasher*, 310 F. App'x at 807.

Further, the district court properly heeded "the important remedial purpose" served by the FLSA collective action mechanism. *O'Brien*, 575 F.3d at 586. "Through it, a plaintiff who has suffered only small monetary harm can join a larger pool of similarly situated plaintiffs." *Id.* And "[t]hat pool can attract effective counsel who knows that if the plaintiffs prevail, counsel is entitled to a statutorily required reasonable fee as determined by the court." *Id.* The judicial system, too, benefits from the collective action mechanism because it allows for efficient resolution of common issues of law and fact arising from the same alleged unlawful activity. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). All of these advantages would, under the facts of these cases, be unnecessarily and imprudently subverted if the waiver issue had to be individually assessed in relation to each plaintiff.

## IV

For the reasons set forth above, the district court's denials of NPC's motions to dismiss or, in the alternative, to compel arbitration are, in all five cases, **AFFIRMED**.