Teri **PROWANT**, et al., Plaintiffs,

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, a/k/a Fannie Mae, a government sponsored enterprise, Defendant.**

**CIVIL ACTION NO. 1:14–CV–3799–AT**

United States District Court, N.D. Georgia, Atlanta Division.

Signed 05/31/2017

Donna L. Johnson, C. Andrew Head, Head Law Firm, LLC, Jerilyn Elaine Gardner, Keegan Law Firm, LLC, Atlanta, GA, for Plaintiffs.

Wendy Lazerson, Sidley Austin LLP, Palo Alto, CA, Teresa Lynn Reuter, Sidley Austin LLP, Chicago, IL, Scott Gilbert Blews, Taylor English Duma LLP, Atlanta, GA, for Defendant.

## ORDER

Amy Totenberg, United States District Judge

Defendant's Motion to Compel Arbitration of Opt–Ins' Claims [Doc. 57] is before the Court. Specifically, Defendant Federal National Mortgage Association ("Fannie Mae") seeks to compel the arbitration of claims for nine individuals who consented to join this Fair Labor Standards Act ("FLSA") case on April 15, 2016. Fannie Mae does not seek anew to compel arbitration of the FLSA claims brought by the two named Plaintiffs, Teri Prowant and Tamara Mitchell–Johnson, or the one individual who opted in earlier, Clifton Holland.

This is not the first time Fannie Mae has raised the issue of arbitrability and, in doing so, halted all proceedings on the Plaintiff employees' FLSA claims. The Court's prior order (Doc. 51) lays out the background facts in more detail, but here they are in a nutshell:

In May 2014, the two named Plaintiffs brought their FLSA claims against Fannie

Mae in a JAMS arbitration forum on behalf of themselves and other "similarly situated" employees. They claimed Fannie Mae had violated the FLSA's overtime provisions. The arbitrator adjudicated the case for several months, during which time Fannie Mae filed an answer, the parties held a preliminary scheduling conference, and the parties briefed the issue of whether Fannie Mae's dispute resolution policy ("DRP") allowed for class claims. But on November 25, 2014, after the arbitrator had set a hearing to address the class claims issue, Fannie Mae suddenly halted the arbitration by filing the current case. Fannie Mae sought a declaratory judgment that its DRP did not allow Plaintiffs to arbitrate their claims as a class and that only this Court (not an arbitrator) could decide whether the DRP allowed class arbitration. Fannie Mae also asked for an injunction to stop the underlying arbitration. Up to this point, Fannie Mae had never raised the argument that the arbitrator could not decide the issue of class arbitrability.

The Court stayed the underlying JAMs proceedings while it resolved the class arbitration issue before it. Only one individual, Clifton Holland, had filed a written consent to join the underlying arbitration before Fannie Mae filed the current action. The Court–ordered stay meant that no other individuals could opt into the underlying arbitration, and it was unclear whether Plaintiffs' FLSA claims would eventually proceed in the JAMS arbitration forum or in federal court. Right around this time, the parties also entered into a stipulation after Plaintiffs raised the concern that the statute of limitations

would meanwhile run on potential opt-in members' claims. The parties agreed, among other things, to toll the statute of limitations on putative opt-in members' claims until the Court's decision on the issue of class arbitration.

Fannie Mae (in the position of plaintiff at the time) then moved for summary judgment. The employee Plaintiffs (in the position of defendants at the time) filed three counterclaims, asserting: (1) that Fannie Mae had waived the DRP by filing the current action, (2) that Fannie Mae had materially breached the DRP by filing the current action, and (3) that, if the Court found either waiver or breach of the DRP, it should allow their "FLSA Individual and Collective Action Overtime Claims" to proceed in this action. (Doc. 19.) The employee Plaintiffs subsequently moved for summary judgment as well.

On March 22, 2016, with the parties' motions for summary judgment fully briefed, the Court referred the parties to mediation. Mediation was scheduled for April 26, 2016. On April 15th, Plaintiffs filed a notice of opt-in consents for the newly added nine opt-ins.[1] (Doc. 48.) Seven of the nine opt-ins had signed the DRP, and two of them had signed the DRP as well as Fannie Mae's new Arbitration Agreement, effective as of January 2015.[2] The parties' counsel then attended mediation on April 26th, which failed, and they so notified the Court sometime later after additional negotiation efforts.

On September 21, 2016, the Court found that Fannie Mae had waived and breached the DRP by filing the current action and therefore granted summary judgment on

1. The notice also included opt-in consents for the named Plaintiffs and Mr. Holland, even though they had already filed to join the case during the JAMS arbitration. (Doc. 48.)

2. Neither Plaintiffs nor the Court was aware of the new Arbitration Agreement—which was

presented to employees in January 2015 and became effective on April 20, 2015—until over a year-and-a-half after it went into effect. Fannie Mae first mentioned the new Arbitration Agreement in its Motion to Compel Arbitration filed on December 1, 2016.

the employee Plaintiffs' (then the defendants') counterclaims. (Doc. 51.) In particular, the Court found that both elements of the waiver test were satisfied: (1) Fannie Mae substantially participated in litigation to the point that it was inconsistent with its right to arbitrate; and (2) Fannie Mae prejudiced the Plaintiffs by delaying the arbitration proceedings and causing them to incur litigation expenses. The Court also found that Fannie Mae breached its arbitration contract with the Plaintiffs by seeking judicial determination of whether the DRP provided for class claims when the DRP delegated that question to the arbitrator. The Court emphasized the "undisputed purpose" of Fannie Mae's filing the current action in federal court was to halt the arbitral process, strip the arbitrator of the authority to decide whether the agreement authorized class claims, and in turn strip the Plaintiffs of their ability to bring class claims. (*Id.* at 19–20.) It further noted that the prejudicial delay was "particularly egregious under the specific circumstances of this arbitration agreement," since the DRP authorized employee claimants to file suit in federal court after the conclusion of arbitration. (*Id.* at 21.) In sum, the Court held that the DRP was waived, breached, and rescinded and the case should proceed in federal court with Counterclaim 3—the Plaintiffs' (then the defendants') underlying FLSA claim—as the only claim left in this case. (*Id.* at 30.) The Court therefore directed the Clerk to re-caption the case to switch the employees, *Prowant et al.*, to Plaintiffs and Fannie Mae to Defendant.

Per the Court's Order, Plaintiffs then filed an Amended Complaint stating their FLSA claims on behalf of themselves and others similarly situated. Fannie Mae timely filed its Answer, including the affirmative defense that any putative opt-ins were still bound to arbitrate based on their individual arbitration agreements with Fannie Mae. Then, on December 1, 2016,

Fannie Mae filed the current motion to compel arbitration for the nine opt-ins. The Court held a hearing on the motion on February 8, 2017, during which both sides had an opportunity for oral argument.

For the reasons stated below, the Court **DENIES** Fannie Mae's Motion to Compel Arbitration of Opt–Ins' Claims [Doc. 57].

## I. LEGAL STANDARD

Fannie Mae moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2, 3, and 4 and supporting case law. Section 2 of the FAA provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The Supreme Court has interpreted Section 2 of the FAA as "reflecting both a liberal federal policy favoring arbitration ... and the fundamental principle that arbitration is a matter of contract." *AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (internal quotation marks omitted). Section 3 mandates the stay of federal court proceedings where the matter is referable to arbitration per the agreement. And particularly relevant here, Section 4 provides the mechanism for parties to move to compel arbitration and for courts to assess the merits of such motions:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satis-

fied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. ·

## II. DISCUSSION

Fannie Mae makes two main arguments as to why it is entitled to compel arbitration for the nine opt-ins. First, Fannie Mae asserts that the Court's prior order finding waiver of the DRP does not cover the nine opt-ins; it only covers the two named Plaintiffs and Mr. Holland (the earlier opt-in). Fannie Mae states that the prior order never references the nine opt-ins. And Fannie Mae contends that this case has only ever involved the named Plaintiffs and Mr. Holland, as Fannie Mae only sought declaratory judgment from the Court on one limited issue: to prevent the named Plaintiffs from bringing FLSA claims on behalf of other employees in the JAMS arbitration. Fannie Mae argues that it never sought to prevent opt-ins from bringing their own claims. Additionally, Fannie Mae argues that the Court could not have found it waived the DRP as to the nine opt-ins because they did not join as parties until after summary judgment briefing was completed. The waiver issue was therefore not ripe for these individuals, and the named Plaintiffs lacked standing to argue waiver on behalf of nonparties. Fannie Mae also emphasizes that the prior order only addressed waiver of a single provision of the DRP, so it does not apply to the newer January 2015 Arbitra-tion Agreement signed by two of the nine opt-ins.

Second, putting the prior order aside, Fannie Mae asserts that neither of the two elements of waiver is met here with respect to the nine opt-ins. For the first element, Fannie Mae argues that it has not acted inconsistently with its right to arbitrate as to the nine opt-ins' claims, since there was very little litigation activity after they joined the case and Fannie Mae raised mandatory arbitration as a defense soon after. The nine opt-ins also cannot satisfy the second prejudice element, according to Fannie Mae, because they only recently became parties. These opt-ins joined the case in April 2016, Plaintiffs then filed their Amended Complaint, and Fannie Mae moved to compel arbitration a little over a month later. Fannie Mae maintains that Plaintiffs have shown no significant expense incurred after these opt-ins joined. Fannie Mae also argues that any prejudicial delay or expense related to the named Plaintiffs does not automatically apply to these opt-ins.

Plaintiffs counter that the Court's prior order finding waiver clearly applies to all putative opt-ins—including the nine opt-ins at issue here. Therefore, Fannie Mae cannot now argue that waiver was limited to the named Plaintiffs and Mr. Holland. Fannie Mae's motion essentially is Fannie Mae attempting a second bite at the apple. Plaintiffs contend that Fannie Mae's purpose in filing this case in the first place was to bar Plaintiffs from bringing a collective FLSA action with opt-ins, not simply to bar their own individual claims. Putative opt-in members have consistently been a central subject of this litigation, as evidenced by the parties' stipulation that tolled the statute of limitations for opt-ins to join. Alternatively, even if the Court's prior order did not cover all opt-ins, Plaintiffs argue that Fannie Mae still waived

arbitration as to the nine opt-ins. Both elements of the waiver test are once again satisfied. Particularly on the element of prejudice, Fannie Mae moved to compel arbitration only after obtaining an adverse ruling on summary judgment—indicating a tactical maneuver as opposed to a legitimate motive. Additionally, Plaintiffs argue that the new Arbitration Agreement (which was signed by two of the nine opt-ins) does not cover the two individual opt-ins' claims, and it is also likely unenforceable as a matter of law.

The Court addresses these arguments by first addressing the scope of its prior order.

## A. The Court's Prior Order Applies to the Named Plaintiffs and to the Nine Opt–Ins

Fannie Mae attempts to construe the Court's prior order on the parties' cross-motions for summary judgment as narrowly as conceivable. According to Fannie Mae, the Court found waiver and breach of the DRP *only* as to the named Plaintiffs and Mr. Holton. Fannie Mae claims this is so because it sought declaratory judgment in this case exclusively against the named Plaintiffs, and only on the limited question of whether they could pursue class claims in arbitration. These arguments are smoke and mirrors. Fannie Mae tries to hide the fact that it is essentially moving for reconsideration of the Court's prior order.

The Court starts with this statement in Fannie Mae's Reply: "[This] action never sought to prevent Opt–ins from bringing their own claims; it sought only to prevent Plaintiffs from bringing claims on behalf of other individuals." (Doc. 64 at 3.) This argument is nonsensical and, at worst, disingenuous. By filing this FLSA action to prevent the named Plaintiffs from bringing claims on behalf of others, Fannie Mae necessarily did so to prevent other putative opt-ins—such as the nine opt-ins

here—from bringing their claims in the same suit. The issues are inseparable. Whether or not the Court's order affected the opt-ins' ability to bring their own claims individually in arbitration is irrelevant. If the Court had issued a declaratory judgment finding that Plaintiffs were barred from bringing a FLSA collective action on behalf of other opt-in employees (or ex-employees) in the JAMS arbitration, this would have inevitably affected the opt-ins' ability to bring their current claims in this case. Fannie Mae's Complaint for Declaratory Relief acknowledges this: "An actual and justiciable controversy exists between Fannie Mae and [Plaintiffs] *concerning the arbitrability of the putative class claims* that [Plaintiffs] have purported to bring in the JAMS Arbitration." (Compl. ¶ 2.) The distinction that Fannie Mae is trying to make here does not hold water.

Accordingly, in its prior order, the Court viewed its analysis of waiver and breach to extend both to the named Plaintiffs and the nine opt-ins. Fannie Mae cannot force a narrower interpretation of the prior order simply because the order didn't explicitly use the verbiage of "opt-ins" in its Order. In fact, the conclusion of the order prohibits such a narrow interpretation. The order states that "[Plaintiffs'] Counterclaim 3 is the only claim left in the case. It is [Plaintiffs'] underlying FLSA claim." (Doc. 51 at 30.) Plaintiffs set forth Counterclaim 3 in their Answer as "FLSA Individual and *Collective Action* Overtime Claims." (Doc. 19 at 12) (emphasis added). Plaintiffs further stated that, for purposes of Counterclaim 3, they "allege in this Court action the claims alleged in their Demand for Arbitration in the JAMS Arbitration"—and the record is clear that Plaintiffs alleged their underlying claims "individually and on behalf of others similarly situated." (*Id.*; JAMS Preliminary Order No. 2, Doc. 38–4 at 1; Lazerson

Decl., Doc. 12 ¶ 4.) Thus, the Court authorized this case to proceed not only on the named Plaintiffs' individual claims but on the opt-ins' claims as well.

Fannie Mae also tries to re-characterize the nature of the proceedings so far, which have always focused on Plaintiffs' pursuit of their claims as a collective action and individuals opting in, as authorized, at a later date. From the start, Plaintiffs filed their claims in the arbitration forum "individually and on behalf of others similarly situated." (JAMS Preliminary Order No. 2, Doc. 38–4 at. 1; Lazerson Decl., Doc. 12 ¶ 4.) The Court's prior order made this explicit: "On its face, the undisputed purpose of Fannie Mae's declaratory judgment action was to arrest the arbitral process so the Court could issue ... a declaration stripping Defendants of the ability to bring their claims as a class, which they *obviously intended to do from the moment they demanded arbitration....*" (Doc. 51 at 19–20.) There was never a doubt that Plaintiffs sought to bring their claims as an entire class, so the Court saw no need in its prior order to distinguish between the named Plaintiffs, the earlier opt-in Mr. Holland, and putative opt-ins when allowing this case to proceed in federal court based on its findings of waiver and contract breach.

Logically, why would the Court bother to address the issue of waiver and breach at all if its decision was only applicable to the named Plaintiffs? The Court knew that Plaintiffs had moved for summary judgment on their waiver and breach counterclaims so that, if they prevailed, they could then pursue their claims as a collective action with opt-ins—not just their own individual claims. The Court granted summary judgment with that understanding. It did not do so as a mere mental gymnastic exercise in arbitration law. Given that any putative opt-ins had likely also signed the DRP, a narrower order would essentially be nothing more than a meaningless gesture: it would mean that no one else could join the case because no one else could escape mandatory arbitration under the DRP. Plaintiffs, then, could no longer bring a collective action. The Court's prior order clearly did not indicate that it was granting Plaintiffs' motion for summary judgment on such narrow, limited grounds. The order allows Plaintiffs to proceed to pursue the collective action claims they brought from the start and include, in any event, opt-ins in this action.

Fannie Mae's ripeness and standing arguments are also misleading. Fannie Mae would have the Court believe that from now on, every time an individual files a consent form to join this case, the Court must evaluate whether Fannie Mae waived its arbitration agreement as to that individual. According to Fannie Mae, this is because the named Plaintiffs lacked standing to argue waiver on behalf of the putative opt-ins for purposes of the prior order and also because the waiver issue was not yet ripe for putative opt-ins at that time. Fannie Mae cites no controlling authority for the proposition that waiver must be determined on this sort of individualized basis in the factually specific circumstances at issue here. Rather, both parties cite to cases of persuasive authority that arrive at directly opposing conclusions.

Fannie Mae cites to an unpublished case from the Middle District of Florida, *Collado v. J. & G. Transport, Inc.*, where the defendant—as Fannie Mae does in this case—only moved to compel arbitration as to the opt-in plaintiffs and not the named plaintiff. The court then analyzed the waiver issue solely with respect to the opt-in plaintiffs. It dismissed the opt-in plaintiffs' claims because, specifically from the time they joined the case, they failed to show that the defendant had engaged in much litigation activity or caused them prejudice in the form of delay or expenses. As a

result, it only allowed the named plaintiff's claims to proceed. The *Collado* district court does not cite to any authority or explain its reasons for analyzing waiver in this way.

Plaintiffs cite to *Gunn v. NPC Intern., Inc.*, an unpublished Sixth Circuit decision, as support for the opposite position. 625 Fed.Appx. 261 (6th Cir. 2015). The Sixth Circuit upheld the district court's decision to deny the defendant's motion to compel arbitration—which applied to approximately two hundred opt-in plaintiffs who had joined the collective action at different times over the course of a year and a half. *Id.* at 268. Specifically, the Sixth Circuit agreed with the district court in rejecting the argument that it must evaluate the waiver issue individually for each opt-in plaintiff from the date that he or she opted in, as opposed to the date when the original complaints were filed. *Id.* at 266. The Sixth Circuit reasoned that all of the plaintiffs were "similarly situated" with respect to waiver issues. They were before the same judge, were represented by the same counsel, and asserted the same FLSA claims regarding the same policies imposed by the defendant. In this way, the expense and delay due to the defendant's failure to raise arbitration earlier was "effectively the same for all plaintiffs, irrespective of when they opted in." *Id.* Moreover, each opt-in plaintiff's filing to join the case did not substantially alter the scope or theory of the case in such a way that would "revive" the defendant's right to compel arbitration. *Id.* The defendant had been "on notice" since the start of litigation that plaintiffs' claims were brought under the FLSA as collective actions, but it "made the conscious decision not to assert the arbitration issue" until much later. *Id.* Thus, it was unnecessary to evaluate waiver again and again for each opt-in plaintiff. *Id.* Additionally, the Sixth Circuit reasoned that individual waiver assessments would subvert the important reme-

dial purpose behind the FLSA's collective action mechanism, by making it nearly impossible for individuals with small monetary harm to join together. It would also undermine the judicial efficiency gained by resolving common issues altogether. *Id.* at 267–68.

■ The Court is not bound by either of these decisions, and the Eleventh Circuit has not spoken on this narrow issue. Thus, the Court is at liberty to find *Gunn* more persuasive. In particular, the Court agrees with *Gunn*'s reasoning that all Plaintiffs in this case—both the named Plaintiffs and the nine opt-ins—are similarly situated with respect to the issues posed by Fannie Mae's waiver. Fannie Mae's delay in raising arbitration has similarly affected their ability to move forward as a collective action and to resolve their FLSA claims in an efficient and cost-effective manner. The named Plaintiffs and opt-ins share in this harm, and the harm does not materially change just because the opt-ins joined later on. Furthermore, since the Court's prior order finding that Fannie Mae waived and breached the DRP, the addition of the nine opt-ins has not substantially altered the scope or theory of this case so as to revive Fannie Mae's right to compel arbitration for them. The Court also agrees with *Gunn*'s policy reasons for rejecting an individualized waiver analysis for each opt-in. The practical effect of such an analysis would be to subvert this Court's proper exercise of its jurisdiction and decision-making authority *at the request of Fannie Mae* and the important remedial and judicial efficiency purposes of collective actions under the FLSA.

The Court's position is further supported by Eleventh Circuit case law on a related issue: when is it appropriate (or not) to evaluate the waiver issue anew. The following two cases do not directly address the question of whether individualized waiver analysis is required for opt-in plain-

tiffs in a collective action. But they help clarify when certain changes in a case, such as the addition of claims or parties, may justify reevaluating the waiver issue.

In *Krinsk v. SunTrust Banks, Inc.*, the Eleventh Circuit stated that a defendant may "revive" its right to compel arbitration and rescind the earlier finding of waiver only in "limited circumstances"—such as where an amended complaint is filed that "unexpectedly changes the scope or theory of the plaintiff's claims." 654 F.3d 1194, 1202 (11th Cir. 2011). The district court had previously denied the defendant's motion to compel arbitration based on waiver. It found that the defendant had waived its arbitration right as to the named plaintiff after engaging in litigation for nine months before moving to compel arbitration. The defendant appealed, and the Eleventh Circuit vacated the district court's decision. While the Eleventh Circuit agreed that the defendant had waived its right to arbitrate the claims in the *original* complaint, it found that the plaintiff's *amended* complaint so expanded and altered the scope of litigation that it revived the defendant's arbitration right. In particular, the amended complaint "greatly broadened the potential scope of this litigation by opening the door to thousands—if not tens of thousands—of new class plaintiffs not contemplated in the original class definition." *Id.* at 1203. The Eleventh Circuit reasoned that "[t]his vast augmentation of the putative class so al-

tered the shape of litigation that, despite its prior invocations of the judicial process, [the defendant] should have been allowed to rescind its waiver of its right to arbitration." *Id.* at 1204.

Based on this standard, courts have also found that a defendant has *not* revived its right to compel arbitration and that the finding of waiver still stands. One such case is *In re: Checking Account Overdraft Litig.*, which assessed an analogous argument that class certification (i.e., the addition of class members) had revived the waiver issue:

Here, the certification of the class has not changed the scope or theory of the case. As addressed above, these cases have always been treated by all parties as a major class litigation. The case now, after class certification, raises the same claims, under the same theories, that have been asserted since 2008. The certification of the class does not undo Wachovia's waiver of its arbitration rights.

No. 1:09-MD-02036-JLK, 2016 WL 6082035, at *8 (S.D. Fla. Oct. 17, 2016). This logic applies with equal or greater force in the present case. Fannie Mae certainly cannot "revive" its right to compel arbitration each time an opt-in plaintiff joins the case given the scope and focus of the disputes originally presented to the Court. Accordingly, this line of cases further supports the Court's rejection of an individualized waiver assessment.[3]

3. Fannie Mae asserts that the *In re: Checking Account Overdraft Litig.* decision actually supports its argument for individualized waiver analysis. No. 1:09-MD-02036-JLK, 2016 WL 6082035 (S.D. Fla. Oct. 17, 2016). Fannie Mae points out that that the district court previously found waiver as to the named plaintiffs, but the Eleventh Circuit vacated its finding of waiver as to the *unnamed* class members because the district court lacked jurisdiction to do so before the class was certified. Once the class was certified, the district court then assessed waiver again for

the class, and Fannie Mae emphasizes that the court did not automatically extend the prior finding of waiver to the entire class. Instead, the district court assessed the waiver factors (i.e., litigation activity and prejudice) specifically as to the class.

But this argument misreads both the Eleventh Circuit's decision and the district court's decision on remand. First, the Eleventh Circuit stated that, although the district court lacked jurisdiction to assess waiver for unnamed class members before class certification, the Eleventh Circuit could "conceive of

The reality is that, from the time Plaintiffs first filed their demand for arbitration, their claims have always been always been about a limited and known group of people. Plaintiffs brought claims on behalf of themselves and a certain class of underwriters that Fannie Mae had classified as exempt but that Plaintiffs believed were properly classified as non-exempt (and therefore entitled to overtime pay). This case is not about some significantly ever-expanding or alternatively unknowable group of opt-ins. Rather, this case has involved the same harms asserted by a limited group of people holding underwriter positions that Fannie Mae has classified as exempt. Fannie Mae has been fully aware of the individuals who may fall within this classification—and therefore potential opt-ins from this group—from the start of this case.

Thus, the Court's prior order—which found that Fannie Mae had waived its right to arbitrate under the DPR—covered the named Plaintiffs as well as the nine opt-ins at issue. The Court has already ruled that Plaintiffs may pursue this case as a potential collective action. Accordingly, the Court is not required to re-assess whether Fannie Mae waived that right as to each of the opt-ins.

**B. Even If the Court Analyzed Waiver Again as to the Nine Opt–Ins, the Court Still Finds Fannie Mae Waived the DRP**

██ Assuming *arguendo* that the Court's prior order did not end the inquiry, the Court now conducts the two-part waiver test with respect to the nine opt-ins. The Court still finds that Fannie Mae waived its right to compel arbitration as to these opt-ins.

██ As the Court has noted before, "[t]here is no settled rule [ ] as to what constitutes a waiver or abandonment of the arbitration agreement." *Howard Hill, Inc. v. George A. Fuller Co.*, 473 F.2d 217, 218 (5th Cir. 1973).[4] The determination of whether waiver has occurred "depends upon the facts of each case." *Grigsby &*

---

no reason why the unnamed putative class members could not seek preclusive effect for [defendant's] waiver of its right to compel arbitration of their own accord if and when they become part of the case." *In re Checking Account Overdraft Litigation*, 780 F.3d 1031, 1039 (11th Cir. 2015). This statement implies the opposite of an individualized waiver analysis for each unnamed class member.

Second, when the district court eventually assessed waiver for the class (after it was certified), the court did so by considering the defendant's litigation activity and any prejudicial effects *before and after* the class was certified. *Id.* at *6 ("Wachovia's suggestion that this Court should analyze the waiver issue in a vacuum, without considering the Bank's pre-certification attempts to win this case on the merits, is not supported by the law and is antithetical to both the basic purpose, and to the practical realities, of class actions under Rule 23. To accept Wachovia's position would be to render the concept of waiver in the class action context 'an empty shell.' "). Thus, the court relied on the same circumstances—the

defendant's litigation activity and the expenses incurred from the start of the case—to find waiver for the class members just as it did to find waiver for the named plaintiffs. *Id.* at *4, 6. ("Wachovia's extensive pre-class certification use of the litigation machinery was applicable to both the claims of the named Plaintiffs and the class. Wachovia's suggestion that these efforts could only have been concerned with the named Plaintiffs, because the unnamed class members were not yet parties, is implausible and has been repeatedly rejected in similar contexts.... Wachovia's litigation activities over several years have prejudiced the interests of the unnamed class members in the same way the Eleventh Circuit found it had prejudiced the named Plaintiffs.").

**4.** The Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

*Associates, Inc. v. M Sec. Inv.*, 635 Fed. Appx. 728, 731 (11th Cir. 2015) (internal quotation marks omitted).

The first element of the waiver test is whether a defendant has "substantially participate[d] in litigation to a point inconsistent with an intent to arbitrate." *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995). Here, the unique circumstances of this case—Fannie Mae halting arbitration to file in this Court for declaratory relief regarding class arbitrability—show that Fannie Mae's conduct satisfies this element. Fannie Mae has participated in litigation regarding putative opt-ins' claims since Plaintiffs first filed their claims in the JAMS arbitration forum, and certainly since Fannie Mae filed this case to address the very issue of putative opt-ins' claims. The nine opt-ins' claims have therefore been at issue since the start, and Fannie Mae has clearly engaged in significant litigation since then.

But even if the Court followed Fannie Mae's overly narrow interpretation of waiver analysis, and strictly assessed litigation activity from the time the opt-ins joined on April 15, 2016, this timeline would still support a finding of waiver. Fannie Mae waited nearly *eight months* before filing the current motion to compel arbitration for these opt-ins. During that time, the parties engaged in mediation, Plaintiffs filed an amended complaint, and Fannie Mae filed an amended answer. *See, e.g., S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (finding waiver where a party waited eight months from the time the complaint was filed to the time it demanded arbitration). Further, Fannie Mae did not move to compel arbitration of the nine opt-ins' claims until after it had received an unfavorable ruling on summary judgment on September 21, 2016. *See Gunn*, 625 Fed. Appx. at 265 (finding that the defendant's

decision to move to compel arbitration after an unfavorable ruling "is a factor weighing in favor of finding waiver, for it suggests that NPC's delay, instead of being attributable to an innocent or otherwise excusable purpose, was deliberately motivated by some perceived tactical advantage"). Together these facts indicate Fannie Mae acted based on perceived tactical advantages and inconsistently with an intent to arbitrate the opt-ins' claims.

The second element of the waiver test is prejudice to the opposing party. Prejudice to the nine opt-ins is well-established from the start of the case. Yet once again, if the Court only considers the time since the opt-ins joined the case, the opt-ins can still show they suffered prejudice. Plaintiffs claim a "great deal" of attorneys' fees and costs expended over the eight-month period, and Fannie Mae offers no sufficient explanation for why it waited until December 2016 to file the current motion as Groundhog Day round two of the dispute. This was not a situation where Fannie Mae was caught off guard or had to rush to review the relevant law and underlying arbitration agreements. All of this was at Fannie Mae's fingertips in April 2016 when the additional opt-ins joined, but it inexplicably delayed till December 2016.

In sum, even if the Court assessed waiver on an individualized basis for the nine opt-ins, it still finds that both elements of waiver are satisfied here.

## C. The New Arbitration Agreement Does Not Cover the Two Opt–ins' Claims, So the DRP Still Applies and Is Waived

 Fannie Mae mentions for the first time in the current motion that it distributed a new Arbitration Agreement to all employees in January 2015, which became effective as of April 20, 2015 and purportedly replaces the original Dispute Resolu-

tion Policy ("DRP") before the Court. Fannie Mae claims that two of the nine opt-ins (Lambert and Powell) signed this Agreement, and therefore the Court's prior order regarding waiver of the DRP does not apply to their claims. Notably, Fannie Mae does not explain why it waited almost two years after distributing the new Agreement to notify the Court and Plaintiffs about it.

Setting the latter issue aside for now, Plaintiffs correctly point out that the new Agreement does not cover the two Opt-ins who signed it. The relevant language in the Agreement states:

> If you are a current Fannie Mae employee when you receive this Agreement, **Fannie Mae's Dispute Resolution Policy ("DRP") dated March 16, 1998 (available in CoPPeR), will continue to apply to any claims asserted by or on behalf of either party before the Effective Date.** The DRP will also remain in full force and effect for any claims that are not deemed "Covered Claims" under this Agreement and for the arbitration of otherwise Covered Claims in the event an arbitrator or judge determines that this Agreement is unenforceable as to you.

(Doc. 58–2 at 1) (emphasis added). Plaintiffs asserted FLSA claims on behalf of "all others similarly situated"—which includes the two opt-ins—as late as January 26, 2015 when they filed their Answer in this Court. This is before the Agreement's effective date of April 20, 2015. By its own terms, the Agreement does not apply to the two opt-ins' claims in this case, and the DRP continues to apply to their claims. Thus, the Court's finding of waiver as to the DRP still applies to these opt-ins' claims.

The Court need not decide at this time whether the new Agreement is enforceable as a matter of law. Plaintiffs raise some compelling points about the timing of the new Agreement and its potential adverse impact on putative opt-ins in this case. The Court simply reserves this issue in the event that discovery reveals facts showing the new Agreement was targeted in any way at putative opt-ins, designed to affect this litigation, distributed to employees in a coercive manner, or other such evidence calling into question its enforceability.

## III. CONCLUSION

For all of the reasons discussed above, the Court **DENIES** Fannie Mae's Motion to Compel Arbitration [Doc. 57]. The case may proceed consistent with this Order and the prior order (Doc. 51). The parties are **DIRECTED** to confer and submit an updated preliminary scheduling order within 14 days of the date of this Order. Plaintiffs are further **DIRECTED** to specify in the scheduling order the time frame for Plaintiffs' filing of a motion for conditional certification and a briefing schedule on that motion.

**IT IS SO ORDERED** this 31st day of May, 2017.